## McDowell *versus* Rissell.

*Evidence of Fraud against Creditors.—Fraudulent Intermixture of Goods.*

1. In an action of trespass against a sheriff for selling the property of A., a non-resident, under an execution against B. (which property was found in the possession of B., who claimed to hold it as the agent of A.), the declarations of B. are not admissible as evidence of fraud and collusion between him and A., without some evidence of a common purpose or design between them.

2. A very slight degree of concert or collusion, however, is sufficient for this purpose, and may be inferentially established by the relation, conduct, and surrounding circumstances of the parties.

3. Although it is well settled that he who wilfully intermixes his goods with those of another cannot recover them or their value from the other party, if it be impossible to· distinguish and separate them; yet, where there is evidence of fraudulent conduct between two parties, in regard to the creditors of one of them, an improper intermixture of their goods by the party indebted, acting as the agent of the other, cannot be taken advantage of, nor disavowed by the principal in a contest with a *bonâ fide* execution-creditor of the party by whom the intermixture was made: as to such creditors the colluding parties are one.

[McDowell v. Rissell.]

Error to the Court of Common Pleas of *Lycoming county*.

This was an action of trespass, by John McDowell against Daniel S. Rissell, sheriff of Lycoming county, for levying upon and selling, as the property of William McKinney, a quantity of bar-iron, blooms, pig-iron, and old metal, under and by virtue of an execution issued on a judgment in favour of Anderson Harvey. The sale took place May 2d 1857. The declaration was in the usual form, and on the issue raised by the plea of "not guilty," the parties went to trial.

McKinney had been the owner of certain iron works in Lycoming county. In 1856, he became deeply involved, and judgments to a large amount were entered against him. Among these there was one confessed by him in favour of McDowell, the plaintiff in this suit, who is his brother-in-law, and who resided, at that time, in Mifflin county.

Under this judgment, and another in favour of "The West Branch Bank," the personal property of McKinney—including the wood, coal, scrap-iron, bar-iron, nail-rods, pig-metal, ore and stock at the furnace—was levied on, and sold to McDowell and another, who subsequently transferred all his interest in the purchase to McDowell, McKinney acting as the agent of the latter in this transfer.

The property thus sold was left on the premises, in the custody of McKinney, who remained at the works until they were sold by the sheriff, carrying them on as the avowed agent of McDowell.

During this time, he worked up the iron, stock, &c., which had been left by McDowell, with a portion of iron that was about the cupolas, a quantity of old railroad iron that was on the premises, and some iron plates of the rolling-mill and the forge-fires which were considered as belonging to the real estate, making therewith the blooms, broken metal, and pig-iron, which were levied on and sold by the defendant Rissell, on the execution of Anderson Harvey, issued on a judgment recovered after the sale to McDowell; which levy and sale was the trespass laid in the plaintiff's declaration.

On the trial, the plaintiff proposed to ask Frederick Kracht, one of the witnesses, "what the defendant Rissell had told him about the sale of this iron, on the 2d of May 1857; and whether he weighed the iron that the defendant told him he had sold."

This was objected to by the defendant, on the ground that "it was not the best evidence, and, also, because the declarations of the sheriff, not made at the sale, could have no effect on the title." The objection was sustained, and the evidence rejected. This constituted the first bill of exceptions.

The plaintiff then offered to prove, by the same witness, that

[McDowell *v.* Rissell.]

" the iron which he weighed, was the same which was sold on the execution in favour of Harvey."

To this the defendant objected, because he could not sell more than was levied on by him. The court sustained the objection and rejected the evidence; which was the subject of the second exception.

In the course of the trial, the defendant offered to prove "that William McKinney, the defendant in the judgment of Harvey against him, told witness he was going to confess a judgment to John McDowell, a relative of his, and have McDowell issue an execution, and levy on McKinney's property, and buy it for the use of McKinney, so that he could use it under cover of title in McDowell, and that he would then pay such of his debts as he thought proper, out of the proceeds of it; and to prove, in connection with this, that the programme was carried out by McKinney, who continued in possession of all the personal and real property as before; that he intermingled the property with the other iron that had been sold and disposed of as his own, as he thought proper; and that it was this intermixture of property that was levied on by Harvey; and that the greater portion of the iron so levied, was iron that was attached to real estate, at the time of levy of McDowell's execution, and to show McDowell's knowledge of it."

To this the plaintiff objected:

1st. Because McKinney's declarations are not evidence to affect McDowell;

2d. Because the validity of McDowell's judgment cannot be inquired into in this suit; and

3d. Because the evidence is irrelevant.

The court overruled these objections and admitted the evidence; which was the subject of the third exception.

The court, *inter alia*, charged the jury, that "Whether there was fraud or collusion between McKinney and McDowell, or confederation between them, so as to cover up and conceal McKinney's property, and prevent his lawful creditors from obtaining their just claims, you must determine from the facts and circumstances."

And in a subsequent part of the charge, "If the mingling of the iron of McKinney was wilful, the confusion wilful, done with a view of preventing creditors from following the property that really belonged to McKinney, McDowell can claim no advantage from it, and Sheriff Rissell should not be held liable." This instruction was excepted to by the plaintiff.

The jury found in favour of the defendant, and judgment was entered on this verdict, whereupon the plaintiff sued out this writ, and assigned for error—

[McDowell *v.* Rissell.]

1. The rejection of the evidence embraced in the first and second bills of exceptions;

2. The admission of the evidence embraced in the third bill of exception; and

3. The instruction to the jury above quoted.

*Scates* and *Lloyd*, for the plaintiff, contended:—1. That the court should have admitted the testimony of Kracht, as to the admission of Rissell, in regard to the kind and quantity of goods sold by him, and for which the action was brought, the present case not differing, in any respect, from ordinary cases of trespass in which such admissions are admitted; citing Paxton *v.* Steckel, 2 Barr 93; Wheeler *v.* Hambright, 9 S. & R. 390; Mott *v.* Kip, 10 Johns. 478; and Yabsley *v.* Doble, 1 Ld. Raymond 190.

2. That the evidence embraced in the second exception was proper, because, whatever may be the rule as to conflicting execution-creditors and parties to a writ, the plaintiff, in all cases like the present, may, if he can, contradict the sheriff's return: Mentz *v.* Hamman, 5 Wh. 154; Watson on Sheriffs 52.

3. The declarations of McKinney were not admissible, to affect McDowell, without proof of a combination between them to defraud the creditors of the former.

4. The court should have instructed the jury that there was no evidence tending to show fraud or collusion between McDowell and McKinney, and should not have submitted that point to them without proof.

5. The instruction as to the effect of mingling the iron, by McKinney, without proof of knowledge or consent of McDowell, was erroneous: Story on Agency, § 208.

*Wm. W. Willard*, for defendant in error.—The declarations of the sheriff, after the execution of the writ, were not offered to contradict this return; mere loose conversations after the sale were no part of the *res gesta*, and so also of the declaration mentioned in the second bill of exceptions.

The testimony of Edwards was properly admitted. The parties were intimately connected. McKinney, who had been sold out, remained in possession as the agent of McDowell. The offer was to prove fraud, which was properly left to the jury. As to the ruling of the court in regard to the mingling of the goods, no honest judge could say less than was said. The ownership of the property was fairly submitted to the jury.

The opinion of the court was delivered, October 17th 1860, by

WOODWARD, J.—The material question in this case arises under the 3d and 4th assignments of error; for, if the court were right in submitting to the jury the question of a fraudulent combina-

[McDowell *v.* Rissell.]

tion betwixt McDowell and KcKinney, the bills of exception in relation to Kracht's testimony lose all their importance, and the charge of the judge touching the confusion of goods can be easily sustained.

And why was not the question of fraud properly submitted? Because, says the plaintiff in error, there was no evidence of it except in the proof of McKinney's declarations; and these were not evidence against McDowell without precedent proof of combination between them to defraud McKinney's creditors.

To make such declarations competent, there must be some evidence of a common purpose or design; but a very slight degree of concert or collusion is sufficient. And there was more than slight evidence here. McKinney was a large iron manufacturer, and deeply indebted. On the 29th July 1856, he confessed several large judgments; one of them to McDowell, who was his non-resident brother-in-law. Under two of these judgments—one that he confessed to The West Branch Bank, and the other to McDowell—the most of his personal property was levied in execution and sold to McDowell and Tomb, the latter of whom admitted McCurdy to an interest. On the 25th of August, after the sheriff's sale, Tomb and McCurdy sold their interest to DcDowell by a written agreement, negotiated and executed by McKinney, as agent of McDowell; and after that McKinney continued in possession of the works and carried on business, as the agent of McDowell, until after the real estate was sold at sheriff's sale. Before he quitted the possession he severed from the realty all the iron that could be turned to account—the iron about the cupola, the railroad iron, and castings—and melted it, along with the iron McDowell owned, into blooms, bars, and pigs, the property the sheriff levied on at the suit of Harvey; and for levying and selling which he is sued in this action of trespass.

Now do not such transactions between parties so related, one of whom was a debtor in failing circumstances, import a common design to hide property from creditors? Why was no account kept of the iron that was wilfully mixed with McDowell's? Why was the mixture made?

It is said McDowell was not there. But McKinney was his accredited agent. His absence cannot excuse him for appropriating to his own use, through his confidential agent, property in which other people had rights. Rather than suffer such wrong to be done, he should have been on the spot in person, or else should have been represented by an honest agent.

The court were right in treating the relations and conduct of McDowell and McKinney as some evidence of a collusive combination, not, perhaps, enough to convict either of them, but enough to furnish ground for admitting McKinney's declarations;

[McDowell *v.* Rissell.]

and the jury having these declarations before them, in connection with these grounds of admission, might well find the transactions of the brothers-in-law fraudulent as to the creditors of the latter. They could not fail to see a singular harmony between what McKinney threatened to do and what was accomplished. Similar evidence was received in Kelsey *v.* Murphy, 2 Casey 84, and has been admitted in many cases. Frauds indeed could never be detected, unless most blunderingly perpetrated, "if the rule of evidence were not so that when any concert is established, the declarations of each confederate become evidence against all his fellows."

The fraudulent conduct of the parties having been thus found, on competent evidence, McDowell cannot, of course, avail himself of the mixture of the goods. As between him and McKinney, the product of the mixture would belong to him, for the law is, that if A. will wilfully intermix his corn or hay with that of B., or casts his gold into another's crucible, so that it becomes impossible to distinguish what belongs to A. from what belongs to B., the whole belongs to B. If the articles are of different value or quality, and the original value cannot be distinguished, the injured party takes the whole. It is for the guilty party to the fraud to distinguish his own property satisfactorily or lose it. No court of justice is bound to make the discrimination for him: 2 Kent's Com. Str. p. 365.

But the contest here is not between McDowell and McKinney, but between McDowell and McKinney's creditors. As to them, the creditors, McDowell and McKinney constitute but one party. McKinney confused goods on which the creditors had a legal right to levy, with goods that belonged to McDowell. McKinney was McDowell's agent. The jury have found, moreover, that they were in fraudulent combination against the creditors. McDowell, therefore, must shoulder the consequences of McKinney's wrong. He must distinguish his own property or lose it. The law will not distinguish it for him.

Thus it is that the principle of law which in other circumstances would have given the goods to McDowell, does, when applied to the circumstances of this case, defeat his claim, and leads us to approve of the rulings of the court.

The judgment is affirmed.