## Commonwealth v. Zuern.

*Criminal law—Conspiracy—Essence of the crime.*

That which gives to the crime of conspiracy its distinctive character is unity of purpose, unity of design, and focalization of effort upon a particular project by the persons named in the indictment.

*Criminal law—Conspiracy—Boroughs—Councilmen—Contractors.*

To allege generally against a number of councilmen of a borough and several bidders for municipal contracts that they have conspired to cheat and defraud the borough, does not enable the commonwealth to prove several conspiracies each affecting different contracts, and different persons or groups of persons interested in particular contracts, unless all of the contracts and the wrong purpose in respect to them form parts of a combination in which the parties have joined. In order that any one of the defendants may be convicted of conspiracy he must be shown to have participated in the alleged combination or concert with all or some of the other defendants.

*Criminal law—Jury—Selection of jurymen.*

A conviction in a criminal case will not be set aside on the allegation that by an inspection of the venires it appeared that a large number of names were taken from the previous year and placed in a block in the wheel for the coming year, where no proof is submitted showing that there was a transfer of the names from wheel to wheel in bulk, except an affidavit on information and belief to that effect.

*Criminal law—Discretion in refusing or granting bill of particulars.*

The matter of granting or refusing a bill of particulars lies within the sound discretion of the trial judge, and where the exercise of such discretion has not been abused, it will not be reviewed by the appellate court.

The defendant in a criminal prosecution is not entitled to demand from

the district attorney a specification of the evidence to be adduced by the commonwealth at the trial.

*Conspiracy—Confederation for unlawful purpose—Injury to others.*

If a conspiracy be to commit a crime or an unlawful act, it is easy to determine its indictable character. If the motives of the confederates be to oppress, the means they use unlawful, or the consequences to others injurious, then a confederation will become a conspiracy.

Where five councilmen of a borough distribute money to other councilmen for the purpose of influencing votes upon legislation in the borough council, affecting the awarding of contracts for paving, and the object is to pass such legislation in respect to the contracts as will be most profitable to the councilmen, and every one of the five has his part in the main purpose, and all participate in the results, such councilmen may be indicted and convicted of conspiracy.

*Criminal law—Conspiracy—Declarations of conspirators—Evidence.*

The declarations of a conspirator are evidence against himself and are also evidence against his associates when they are made during the performance of the fraudulent transactions which constitute the crime charged, for they then form part of such transactions, but when not made during the progress or continuation of the fraudulent scheme but afterwards, they are not evidence.

The question whether or not a conspiracy has been proven is for the jury, but the court decides whether sufficient proof of a conspiracy has been adduced to warrant the introduction of evidence of declarations of a conspirator. The proof of the conspiracy at the point in the trial when the declarations are sought to be introduced, need not be conclusive, but only slight, in order to permit the introduction.

On an indictment of borough councilmen for conspiracy in using money to secure the passage of legislation relating to paving contracts where the alleged conspiracy involves the distribution not only of moneys wrongfully procured from contractors, but also of other moneys payable after the paving contracts were paid by the borough, declarations of conspirators made before the final payment, may be admitted, since they were not made after the completion of the transaction with which the conspiracy was connected.

*Criminal law—Charge of the court—Opinion upon facts.*

It is permissible for a judge in his charge to express an opinion on the facts, provided he does not encroach upon the province of the jury; and he is permitted to carry this to the extent of a free expression of opinion on the weight and value of the evidence, since he is the best advisor the jury can have.

Argued Dec. 10, 1900. Appeal, No. 206, Oct. T., 1900, by defendants, from judgment of Q. S. Northumberland Co., May T., 1900, No. 56, on verdict of guilty in case of Commonwealth v. E. O. Zuern, T. A. Holl, O. J. Reed, W. A. Reppard, W. S.

Zimmerman, W. B. Dixey, Maier Rothschild and H. L. Boas. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed as to certain of the defendants. Reversed as to others.

Indictment for conspiracy to cheat and defraud. Before JOHNSON, P. J., specially presiding.

From the record it appeared that thirteen persons were included in the indictment, which was for a conspiracy to cheat and defraud the borough of Shamokin in passing borough legislation relating to the paving contract.

At the trial the defendants challenged the array of jurors and moved to quash the indictment, filing the following reasons:

1. That the jury wheel was not filled in the manner provided by law.

2. That the jury wheel was filled contrary to the provisions of the law, in that (*a*) the jury wheel was not filled from the body of the county as required by law; (*b*) the names of persons who were drawn from the wheel and served as jurors during the year 1899 were illegally returned to the wheel to be drawn and serve as jurors during the year 1900. It appearing that the names of eighty-seven persons placed in the jury wheel for 1899 were replaced in the jury wheel in 1900; (*c*) that certain jurymen were drawn and summoned and are in attendance at this court as jurymen who were drawn from the wheel for the year 1899 and served as jurymen during the year 1899.

To this motion is appended an affidavit of the truth of the facts with the names of the persons to the number of eighty-seven, who were drawn from the jury wheel of last year, replaced in the jury wheel and drawn out this year and five of them returned to this court and now serving as jurors.

State of Pennsylvania,    }
County of Northumberland. } ss. :

E. O. Zuern being duly sworn according to law doth depose and say that the facts set forth in the foregoing motion are true to the best of his information and belief.

(Signed)        E. O. ZUERN.

Sworn and subscribed before me this 8th day of May, 1900.

(Signed)        JAMES A. McCARTHY,

Prothy.

588, (1901).]                    Statement of Facts.

The court overruled the motion. [1]

Defendants presented the following petition:

The petition of E. O. Zuern, O. J. Reed, and all of the other defendants named in the above stated indictment, respectfully represents : That the averments in the indictment for conspiracy in the above case found and returned by the grand jury as to the charges against the defendants contained therein is general, vague and uncertain and that such charges are not set forth with sufficient particularity to notify the defendants of the specific matters which will be admitted to be proved against them and that it does not furnish the defendants with sufficient information to properly prepare for trial. The defendants have had no preliminary hearing ; that they have never been informed of the charges against them or the reasons by which the alleged conspiracy was accomplished or was to be accomplished and have no knowledge thereof ; that the indictment does not set forth the means by which the alleged conspiracy was, accomplished or was to be accomplished and that the defendants cannot safely go to trial without being informed of the means whereby the alleged conspiracy was accomplished or was to be accomplished.

Your petitioners therefore pray your honorable court to order the district attorney to furnish the defendants and file a bill of particulars of matters they propose to prove in this case and they will ever pray. (Signed), E. O. Zuern, T. A. Holl, O. J. Reed, W. A. Reppard, W. S. Zimmerman, Maier Rothschild, H. L. Boas, G. S. Ettla, H. M. Dixey, W. B. Dixey.

State of Pennsylvania,   }
County of Northumberland. }

Personally appeared before me, E. O. Zuern, Thomas A. Holl, O. J. Reed, Wm. A. Reppard, W. S. Zimmerman, Wm. B. Dixey, Maier Rothschild, H. L. Boas, G. S. Ettla, H. M. Dixey, who being duly sworn according to law doth depose and say that the facts set forth in the foregoing petition are true and correct to the best of their knowledge and belief and that this motion is not made for the purpose of delay.

Sworn and subscribed before me this 9th day of May, 1900. JAMES A. McCARTHY, Prothonotary.

(Signed), H. M. Dixey, W. B. Dixey, Thomas A. Holl, E. O. Zuern, O. J. Reed, W. A. Reppard, W. S. Zimmerman, Maier Rothschild, H. L. Boas.

The Court: The transcript in this case showing the time at which these men were charged having been filed on March 26, 1900, the motion is overruled. To which the defendants except and bill sealed. [2]

The court under objection and exception admitted in evidence declarations of certain of the defendants as to the subject-matter of the indictment. [3–30]

The court charged in part as follows:

[The allegation in this case is, that this conspiracy to cheat and defraud was of this particular character, and I will call your attention to it because it has been stated in a number of ways. It is a conspiracy to cheat and defraud the borough of Shamokin. The means alleged by the commonwealth is, that in the letting of its contracts for the paving of its streets, there was a combination of persons consisting of the five members of the borough council of Shamokin named, and the gentlemen whom I have named as gentlemen representing bricks and contractors, that they together conspired for the purpose of cheating and defrauding the borough of Shamokin. That is the allegation. It does not need to be proven that the borough was cheated if the commonwealth have shown you, first, that these men by concert of action agreed to cheat and defraud the borough. It is totally immaterial whether they accomplished it or not. The gist of this action is this conspiracy, or the concert of action, concert among these people to cheat and defraud the borough of Shamokin. Did they do it? Before you can find either two or more of these defendants guilty, you must find from the evidence that they entered into a concert, that all were engaged in it, that you may find guilty, to do this unlawful act, to do this cheating and defrauding of the borough.] [36]

[The commonwealth relies upon the testimony of three or four people. I may say to you, that you may take for granted all the testimony in the case. It is uncontradicted upon the part of the defendants. The witnesses have not been assailed on the ground of veracity, and you may conclude that their statements are true so far as this case is concerned. They ought to be believed unless they have been contradicted in some way or their veracity impugned. However that is for you.] [37]

[The commonwealth have called to the stand three members

of council, Phillips, Thompson and Delaney and they have told you that they met these members of council, Zuern, Holl, Reed, Reppard and Zimmerman. You have heard their statements. They have agreed in very great part that these councilmen gave them money for the purpose of influencing their votes upon legislation in the borough of Shamokin. There can hardly be much question as to the fact of Zuern, Holl, Reed, Reppard and Zimmerman being in some manner connected with the corrupt use of money for that purpose, and if you shall so find from the evidence, whether from the evidence of Phillips, Thompson, Farrow and Delaney, or from the statements made by Zuern, Holl, Reed, Reppard and Zimmerman to them that there was a conspiracy, an agreement, a concert of action on the part of these five members of council to pay money to these parties, Phillips, Delaney or any other member of council or to receive it from other people for the purpose of influencing their votes, if you can find from this evidence that there was a concert of action on their part, then the first step in this conspiracy will be attained. If you find that fact that these members of council did all of them agree, not that they met together and agreed, not that they were all at the same place or same time, but if you find from the circumstances detailed by the witnesses that they were all engaged in the common purpose, and that common purpose was to cheat and defraud the borough of Shamokin, the first step in your finding in this conspiracy will be complete. If you shall get that far along then take up that part of the case which related to these contractors.] [38]

[Now in your finding, gentlemen, it will not be necessary, as has been stated by some of the counsel for the defendants, that you must either find all of these people guilty or none. You may find two or more of them guilty. If you find from the evidence that only two or more were engaged in this conspiracy, it will be your duty to find them guilty, and acquit the rest. You can find two, three, four, five or six guilty and acquit the rest, but there must be at least two found guilty to sustain this indictment.] [39]

[The testimony upon which the commonwealth relies, as I have said, for the conviction of the members of council, rests mainly upon the declaration of these people. A number of other witnesses have been called who have corroborated the

main witnesses for the commonwealth. The evidence is strong against these five members of council, but it is for you, and the court does not intend to control your judgment in that in any way. But if the story of these witnesses be true, and it is uncontradicted, whether they are guilty of conspiracy or not, there is a degree of depravity in the council of the borough of Shamokin that is remarkable.] [40]

[If you shall find from the evidence then, gentlemen, that these men did by concerted action agree to cheat and defraud the borough, as the court has said, the first step will be taken. But before you can find that fact you must find they were all engaged in that one common purpose.] [41]

[If you do find that these five members of council were engaged in a conspiracy and had colluded for the purpose of defrauding the borough of Shamokin, then every declaration by any one of these members as to what the other did, or was going to do, is evidence against them, just as though each one of the members had stated it.] [42]

[If you shall find from all the evidence in the case that any two of these persons indicted, or more, were engaged in the common purpose to defraud the borough of Shamokin, if you shall find that fact beyond any reasonable doubt, it will be your duty to convict them, two or more.] [43]

[The court does not intend to detain you by reciting the evidence, merely desiring to say to you that you need not find that all these people met in a room or any other place ; you may take up the different acts pointed out by the commonwealth and they are in the main these : they say that the acts which constitute this conspiracy consists in this, that the scheme was to influence the minds of the members of the borough council by the use of money. The scheme was to control the vote of this borough council, but it must be shown before these people can all be convicted, or any part of them, to be for the common benefit of the men charged, and you must find before you can convict two or more of these people for conspiracy to defraud, that they attempted to control this vote for their common benefit. That it is the unlawful intent to do that thing which constitutes the offense. You may find it from the different circumstances testified to by the witnesses for the commonwealth. They are, that these people met together. First, they

show them to be together, that is the first step in a conspiracy. You must bring the people together in some way or the other or bring them together by certain circumstances which not only infer but which show that they knew what was going on and were a party to it. They show you that these people were together about the borough council. There is nothing wrong about that. That is only a circumstance. They show that they go to a neighboring saloon and are treated by one or more of these alleged conspirators. They show you that they go to a place of public amusement. It does not appear who bought the tickets exactly, but they were shown to be together, and it is shown that these members of council that are indicted have money which they are offering to other members of council for their votes, and saying they have so much themselves and have it for other members of council. They show you the votes in council, how they voted in the particular meetings of council, and how they voted on the particular ordinances affecting the contracts for which this money is to be expended. They show you a variety of circumstances. The court does not intend to recite them, and they ask you from these circumstances to find there was a common purpose, and that common purpose was to cheat and defraud the borough of Shamokin. If these circumstances satisfy you that these persons, with any two or more of them, were engaged in the common purpose, then it will be your duty, finding beyond a reasonable doubt, to convict them.] [44]

[Counsel for the defendants have called your attention to what they say is a fact, that there are other indictments against these defendants, and that they ought not to be convicted because there are other indictments charging them with offenses for which they may be convicted. If counsel for the commonwealth had objected or the court had noticed it earlier, they would have been prevented from making any such statement to the jury. The court does not know of any other indictments, none are in evidence, and if there are a hundred, you have nothing whatever to do with them.] [45]

Defendant's points among others were as follows:

12. That there is not sufficient evidence to connect H. L. Boas with the alleged offense. *Answer:* Refused. [51]

8. That there is not sufficient evidence to connect William B. Dixey with the alleged offense. *Answer*: Refused. [53]

Verdict and judgment of guilty.    Defendants appealed.

*Errors assigned* were (1) in refusing to quash the indictment. (2) In refusing to direct the district attorney to file a bill of particulars. (3–30) Rulings on evidence as above. (36–45, 51, 53) Above instructions, quoting them. (52) In not directing the jury to render a verdict of not guilty as to Maier Rothschild.

*W. H. M. Oram, John G. Johnson, W. W. Ker* and *James Scarlet,* with them *Harry S. Knight, S. P. Wolverton, Voris Auten* and *W. K. Stevens,* for appellants.—The challenge to the array should have been sustained: Kell v. Brillinger, 84 Pa. 276; Hilands v. Com., 111 Pa. 1; Clark v. Com., 29 Pa. 135.

The bill of particulars should have been allowed: Williams v. Com., 91 Pa. 493; Com. v. Wilson, 1 Chester County Rep. 538.

The declarations should have been excluded: Clark's Criminal Procedure, 326; Evans v. People, 90 Ill. 384; 4 Lawson's Criminal Defenses, 524; Wright & Carson's Eng. & Am. Criminal Conspiracies, 129; Wagner v. Aulenbach, 170 Pa. 495.

The testimony of the commonwealth showed that the objects of the defendants were diametrically different in nature, character, purpose, methods, in fact everything that an agreement between the defendants could not be claimed, and concert of action was simply an absurdity.    The court had no right to submit to the jury the finding of a fact which was not only unsupported by evidence but absolutely negatived by the undisputed testimony in the cause: Stouffer v. Latshaw, 2 Watts, 165; Hannay v. Stewart, 6 Watts, 487; Switland v. Holgate, 8 Watts, 385; Gilchrist v. Rogers, 6 W. & S. 488; Evans v. Mengel, 1 Pa. 68; Bradley v. Grosh, 8 Pa. 45.

*J. W. Gillespie,* and *James Mahon,* with them *D. W. Shipman,* district attorney, and *P. A. Mahon,* for appellee.—A bill of particulars is not demandable as of right in criminal cases, but is discretionary with the court: Com. v. Buccieri, 153 Pa. 535; Com. v. Eagan, 190 Pa. 10.

The act of each conspirator emanates from him individually, yet when they are part of a system of conspiracy they are ad-

missible in evidence against his coconspirators, although each component act may constitute an independent offence: Wharton's Crim. Evidence, sec. 32; Com. v. Spencer, 6 Pa. Superior Ct. 256; Com. v. McClean, 2 Parsons, 367; McDowell v. Rissell, 37 Pa. 164; Heine v. Com., 91 Pa. 145; Kimmell v. Geeting, 2 Grant, 125; Hinchman v. Richie, Brightley's Rep. 143; Com. v. Neills, 2 Brewster, 553; Helser v. McGrath, 58 Pa. 458.

OPINION BY WILLIAM W. PORTER, J., March 19, 1901:

The appellants were convicted under an indictment charging them with conspiracy to cheat and defraud the borough of Shamokin. The facts are to be gathered from some 1,200 pages of printed testimony submitted by the commonwealth,—the defendants offering no evidence. Thirteen persons were originally indicted. Two were not tried. Three were acquitted. Eight were convicted and now appeal. Of the eight, five were members of the borough council, viz: Zuern, Holl, Reed, Reppard and Zimmerman, and three, Dixey, Rothschild and Boas, were alleged to be interested in procuring contracts for street paving for which bids were invited by the borough.

We have reached the conclusion that the judgment of the court below, as to the five members of council, must be affirmed, and that as to the three other defendants, it must be reversed. The first conclusion involves passing upon a large number of assignments of error. The second does not. We, therefore, take up the discussion of the second branch of the case first.

We are of opinion that the judgment as to Dixey, Rothschild and Boas should be reversed because the testimony offered by the commonwealth does not sufficiently connect them with the conspiracy charged. No common design, concert or combination is shown either between these three or between them, or any of them, and the convicted councilmen. Dixey represented the Alcatraz Paving Company, which was desirous of securing the work of laying the pavement upon the several streets of the borough. Boas represented the Montello Brick Company, which desired to furnish the brick for said pavements and was in competition with the Clearfield Brick Company, the Canton Brick Company, and a large number of others. Rothschild, a clothing dealer in Shamokin, was alleged to be an

agent for the Montello Brick Company. The three defendants acquitted were two alleged representatives of the Clearfield Brick Company and a representative of a firm of contractors bidding on the paving work.

Assuming that there was a conspiracy shown among the councilmen to cheat and defraud the borough of Shamokin, it was incumbent upon the commonwealth to prove a participation in the common project or design, by the three defendants named, in order to convict them. The indictment is general in its terms. It charges that all the defendants "fraudulently, falsely, maliciously and unlawfully did conspire, confederate and agree between and among themselves to cheat and defraud the borough of Shamokin . . . . of its moneys, goods, chattels and other property." The learned trial judge, in his opinion refusing to arrest the judgment, says that "the allegations of the commonwealth are that the conspiracy was to control the awarding of brick or paving contracts by bribing members of council." The theory of the commonwealth, by which the three defendants named are to be brought within the indictment, seems to be that the competitive bidders upon the paving work and upon the material for the work, joined each other and the councilmen of the borough in such an arrangement that the work upon the several streets to be improved should be portioned out among the several bidders, and that the councilmen should be paid for carrying this arrangement into effect by legislation. This required evidence connecting the several bidders with such an arrangement in order to hold them. But the commonwealth's evidence shows, if the witnesses are to be believed, that there was a condition of competitive bidding. Each of the several concerns was anxious to secure for itself as much of the work as possible. No evidence was adduced showing that they met in conclave to apportion out the several contracts. If corrupt solicitation was used, it would seem that it was not to procure legislation effecting an apportionment of the work among the several bidders, but solicitation which looked to the procurement by each of the separate bidders or material men of a larger portion of the work to be done or of the materials to be furnished than that awarded to his competitors. The business concerns interested in the bidding were numerous. The representatives of some of the bidders were not indicted in this proceeding.

In corroboration of the assertion that as to the bidders there was no sufficient combination or concert shown, take the letting of the contract of Market and Spruce streets. For this piece of work, the evidence shows that there were some twelve separate bidders. A number of different paving materials were submitted to the council. The council adopted the Montello brick and awarded the contract to do the work to the Alcatraz Paving Company. The burgess, on petition of citizens, vetoed the ordinance. Thereupon, the contract was reawarded, as to the work, to the same paving company, but the Metropolitan brick was adopted as the paving material, instead of the Montello. This curious result follows: that included in the same bill of indictment, charged with participation in the same conspiracy, are the representative of the contracting company, the representative of the successful bidder on material, the representative of the rejected bidder on material, and several councilmen, some of whom were advocates of one material and some of another. On such a state of facts a concert of action or a combination among the parties would scarcely be asserted. The view that no sufficient evidence of combination among the bidders was presented, is not shaken by the fact that there is some testimony of declarations made by certain councilmen (who are charged as conspirators) which indicates corrupt solicitation on the part of some of the bidders. Under certain circumstances (as will hereafter be seen), declarations by conspirators may be shown to bind or affect their fellows, but such declarations are not admissible until the parties affected thereby have been shown to be connected in some degree with the conspiracy charged. It was testified that some of the bidders were with some of the councilmen at a place of entertainment and at certain restaurants, where the expenses were probably paid by one or other of the bidders. These bidders, however, represented separate interests. The testimony is not that their acts were in combination. They would seem to have been looking after their individual interests. Not a word of the testimony shows that any reference was made to the borough contracts. The worst construction that can be placed upon their acts is that they were attempting, for individual benefit, to corruptly influence the councilmen in their impending action in respect to the work to be awarded or the material to be adopted. It is said of Roths-

child that he gave a suit of clothes and offered a sum of money to one of the councilmen to induce him to support the adoption of the Montello brick in some of the contracts. This, if true, does not bear the stamp of participation in a combination to apportion the awards of work and material, but, on the contrary, of an effort to procure the adoption of a particular material to the exclusion of others. It does not tie him to the general conspiracy as charged and attempted to be proven. It is not possible, by the broad scope of the allegations contained in the indictment, to implicate in the conspiracy charged, any and everybody connected with all contracts of every kind had or to be had with the borough. That which gives to the crime of conspiracy its distinctive character is unity of purpose, unity of design, focalization of effort upon a particular project by the persons named in the indictment. To allege against a number of persons generally that they have conspired to cheat and defraud the borough does not enable the commonwealth to prove several conspiracies, each affecting different contracts, and different persons or groups of persons, interested in particular contracts, unless all of the contracts, and the wrong purposed in respect to them, form parts of a combination in which the parties have joined. In order that any of the defendants may be convicted of conspiracy, he must be shown to have participated in the alleged general combination or concert with all or some of the other defendants. Herein we think the proof, as to the three defendants named, failed. No attempt is here made to notice the several pieces of evidence which may seem to have a bearing on the question of the conspiracy, or participation in the wrongdoing of the borough councilmen by the three defendants named. Such an attempt would extend the limits of this opinion beyond the bounds of usefulness and propriety. Every item of testimony, however, has been weighed and examined. There is no sufficient evidence in the case to warrant the conviction of Dixey, Rothschild or Boas. The court below had the power to direct (Pauli v. Commonwealth, 89 Pa. 432; Krause v. Commonwealth, 93 Pa. 418; Commonwealth v. Ruddle, 142 Pa. 144; Commonwealth v. Harris, 168 Pa. 628) and should have directed a verdict in their favor. The fifty-first, fifty-second and fifty-third assignments of error are sustained.

The second branch of the case involves the conviction of the five members of council. We have said that the judgment entered by the court below against these defendants must be affirmed. Some of the assignments of error require separate notice. Among them is the first, which goes to the refusal of the court below to sustain the defendants' challenge to the array of jurors. The application was upon motion (to which was attached an affidavit of one of the defendants) founded upon the statements first, that the jury wheel was not filled in the manner provided by law; second, that the wheel was filled contrary to law, (a) because not filled from the body of the county; (b) because the names of persons who served as jurors during 1899, were illegally returned to the wheel to be drawn during 1900; (c) because certain jurymen were drawn and present in court at the trial who were drawn for the year 1899, and served during that year. The counsel also offered the venires for 1899 and 1900 for the inspection of the court.

The Act of April 10, 1867, P. L. 62, requires the president judge and jury commissioners to meet thirty days before the first term of the court of common pleas in every year, " and thereupon to select alternately from the whole qualified electors of the county the number designated by the court, of sober, intelligent and judicious persons to serve as jurors in the several courts of the county during that year." It is alleged that from the facts exhibited to the court, a violation of this act of assembly was shown. It is contended that by inspection of the venires it appeared that some eighty or more names were taken from the previous year and placed in a block in the wheel for the coming year. The appellants themselves say, however, that this is the only " probable inference " to be drawn from the venires. The question whether or not the jurors were properly drawn cannot be determined on a basis of such an inference. No proof was submitted showing that there was a transfer of the names from wheel to wheel in bulk. The statement of fact in the motion was attested by an affidavit on information and belief, but no attempt was made to definitely prove that there was a transfer of names in bulk, or any of the facts alleged in the motion. The learned trial judge was warranted, in the absence of satisfactory proof that the provisions of the

act of assembly had not been complied with, in overruling the motion. See Campbell v. Commonwealth, 84 Pa. 195.

Under the second assignment of error the appellants urge that the trial judge committed error in refusing the petition of the defendants for an order upon the district attorney to furnish a bill of particulars. The indictment contained two counts, charging the defendants with conspiracy to cheat and defraud the borough of Shamokin. The counts are substantially the same, except that the first concludes as a common-law count, and the second, a violation of the act of assembly. It must be admitted that the indictment was general in its terms. It may be that had the learned trial judge been able to foresee the somewhat intricate facts presented by the huge bulk of the commonwealth's testimony, he would, not only in aid of the defendants, but for the assistance of the court, have simplified the issues by directing a bill of particulars to be filed. It is possible, however, that this suggestion may have its birth in the labor in which this court has been involved in its review of the case. At all events, the matter of granting or refusing a bill of particulars lies within the sound discretion of the trial judge. The defendants were not entitled to demand the bill as a matter of right. We are not prepared to say that the learned trial judge improperly exercised the discretion with which he was clothed. It does not appear that the defendants were surprised by any unexpected proof submitted by the commonwealth. It does appear by the petition for the bill that the defendants desired to know the "specific matters which will be attempted to be proved against them." The prayer of the petition is that the district attorney be directed to "file a bill of particulars of matters they propose to prove in this case." These requests were in effect for a specification of the evidence to be adduced by the commonwealth. This the prisoners had not the right to demand nor the court to require: Commonwealth v. Buccieri, 153 Pa. 547. The second assignment of error is dismissed.

The remaining numerous assignments raise comparatively few questions requiring special notice. These may be discussed without direct reference to the assignments by number. The first is whether the evidence presented by the commonwealth warranted a submission to the jury of the question as to the guilt of the five councilmen of the crime of conspiracy charged.

This question should involve a review of the evidence by us. But, as in the treatment of the first branch of the case, we will here restrict ourselves to an expression of opinion upon the facts, in order to save the discussion from degenerating into a mere grouping of excerpts from the testimony. The proof submitted by the commonwealth was in large part the testimony of three members of the borough council, Thompson, Phillips and Delaney. These men, inspired by the burgess, undertook to secure information of the wrongdoing of their associates in council. The five defendants, if the evidence is to be believed (and it is uncontradicted), distributed to the three witnesses money for the purpose of influencing their votes upon legislation in the borough council, affecting the awarding of contracts for paving. The evidence further shows that the five councilmen were all associated in the corrupt use of money for the purpose named. It was distributed by several of them to their fellows and to the witnesses. There is no doubt about the concert of action in this branch of the case. The object was to pass such legislation in respect to the paving contracts as would be most profitable to the councilmen. Every one of the five had his part in the main purpose. All participated in the results. The source of the money is not absolutely proven, but there is little doubt that it was the bidders on the contracts, or the purveyors of paving material. Whencesoever it came, the procuring of it and the use of it stamp the transaction on the part of the councilmen as a conspiracy, the purpose of which was to cheat and defraud the borough. Assuming that it does not appear that the contracts were awarded for a palpably excessive price or for inferior material, the fact remains that the five councilmen of the borough procured for themselves and associates sums of money which, if payable at all, should have gone into the borough treasury, or in relief of the borough in its payments under the contracts, and not into the pockets of the councilmen. Under these circumstances, who can throw serious doubt upon the propositions that there was among these five men a concert of action and that they were all engaged in the common purpose of cheating and defrauding the borough? "If the conspiracy be to commit a crime or an unlawful act, it is easy to determine its indictable character. . . . If the motives of the confederates be to oppress; the means they use unlawful; or

the consequences to others injurious, then confederation will become a conspiracy." AGNEW, J., in Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 187.

We pass to the inquiry whether the court rightly permitted testimony to be given of declarations made by alleged co-conspirators. The rule has been held generally to be that the declarations of a conspirator are evidence against himself and are also evidence against his associates when they are made during the performance of the fraudulent transactions which constitute the crime charged, for they then form part of such transactions, but when not made during the progress or continuation of the fraudulent scheme, but afterwards, they are not evidence: Heine v. Commonwealth, 91 Pa. 145; Weil v. Cohn, 4 Pa. Superior Ct. 446.

As we understand the argument for the appellants, it does not attack the rule but asserts that (1) there was not sufficient proof of a conspiracy when the court permitted the introduction of the proof of declarations; and that (2) some of the evidence admitted was of declarations made after the conspiracy was at an end. The question, whether or not a conspiracy has been proven is for the jury, but it is manifest from the statement of the rule relating to the admission of declarations, that there is some point to be reached in the trial at which the trial judge is called upon to decide whether sufficient proof of a conspiracy has been adduced to warrant the introduction of evidence of declarations of conspirators. All of the evidence in the cause cannot, in the nature of things, be introduced at the same time, nor can it be foreseen by the trial judge. Again, where many defendants are being tried, it becomes a difficult thing to determine whether a particular defendant has been, by preceding evidence, so connected with the alleged conspiracy as to warrant the admission of proof of his declarations. The proof of the conspiracy at the point in the trial when the declarations are sought to be introduced, need not be conclusive, but only slight, in order to permit the introduction. See McDowell v. Rissell, 37 Pa. 168. In a civil proceeding it has been held that a division of the profits of the fraudulent transaction is sufficient evidence of combination in the first instance to render admissible the declarations of one conspirator against the rest: Kimmell v. Geeting, 2 Grant, 125. See also Commonwealth v.

O'Brien, 140 Pa. 555, and Donnelly v. Commonwealth, 6 W. N. C. 104. It has been held, and with some show of reason, that the fact that some of the acts and declarations of the conspirators were allowed to come in before proof was made of the conspiracy or of the defendants' connection with it, is no ground of objection, since the matter is largely discretional with the trial judge: 4 Am. & Eng. Ency of Law (1st ed.), p. 634.

The learned judge of the court below steered a skilful course amid the complications incident to the case on trial. We believe that he made no mistake when he admitted the proof of declarations, but even if when admitted, the proof of conspiracy was weak, before the conclusion of the trial there was abundant proof to support his ruling as to the declarations and to carry the case to the jury on the questions of conspiracy and of implication therein. Under these circumstances, the error, if it was error, was corrected: 6 Am. & Eng. Ency. of Law (2d ed.), p. 869. The appellants further complain that declarations, made after the completion of the transactions with which the conspiracy was connected, were admitted. We agree with the court below in holding that the transactions were not completed. The conspiracy involved the distribution not only of moneys wrongfully procured, but also of other moneys payable after the paving contracts were paid by the borough. Some of the latter had not yet been paid when the declarations admitted in evidence were made. It may be that in order to secure their payment further legislation would become necessary. The conspiracy was not ended to the extent of shutting off the evidence admitted of declarations of conspirators: McCaskey v. Graff, 23 Pa. 321; Lowe v. Dalrymple, 117 Pa. 564; Helser v. Mc-Grath, 58 Pa. 458.

Many assignments of error are founded upon parts of the charge of the court. Eliminating those parts which permit the jury to find Dixey, Rothschild and Boas guilty of participating in the conspiracy, the charge was clear, easily intelligible and free from reversible error. The appellants contend that the instruction of the court permitting the jury to find any two or more of the defendants guilty, was erroneous. It is not alleged that as a general rule such instruction would be improper. It is urged that there were several contracts before the court in respect to which some or other of the parties were interested;

that some of the defendants were interested in one contract, but not in others ; that in effect several conspiracies were shown ; and that under the charge some of the defendants might be convicted of conspiracy in one of several conspiracies. The argument is ingenious but specious. The charge makes it plain that the conspiracy to cheat and defraud was one, and that the wrong acts incidental to the several contracts were but parts of the main conspiracy to cheat and defraud. Under the instructions of the court we are not able to see that the verdict of the jury can be construed to be anything but conviction of participation in the one main conspiracy.

The evidence was ample to warrant the conviction of the councilmen of the conspiracy charged, and the language of the judge in condemnation of their conduct, complained of as being unjudicial, was justifiable. His remarks upon the weight to be given to the evidence of the commonwealth, in the absence of any evidence whatever submitted on behalf of the defendants, was not reversible error, especially as they were coupled with the notice to the jury that the credibility of the witnesses was for them. It is permissible for a judge in his charge to express an opinion upon the facts, provided he does not encroach upon the province of the jury (Commonwealth v. Winkelman, 12 Pa. Superior Ct. 511. See also cases there collected), and he is permitted to carry this to the extent of a free expression of opinion on the weight and value of the evidence, since he is the best adviser the jury can have : Fredericks v. Northern Central R. R. Co., 157 Pa. 128 ; Leibig v. Steiner, 94 Pa. 466.

There are a number of subsidiary question sraised by the appellants, but none which we regard as of sufficient importance to require special notice.

We sustain the fifty-first, fifty-second and fifty-third assignments of error and direct that the defendants, W. B. Dixey, Maier Rothschild and H. L. Boas, be discharged. We dismiss the remaining assignments and direct that the record be remitted and that the sentence imposed by the court below upon the defendants, E. O. Zuern, T. A. Holl, O. J. Reed, W. A. Reppard and W. S. Zimmerman, be carried into effect.