Opinion by
Beaver, J.,
The appellant, another named and others not named were indicted for a conspiracy, in the first count, for agreeing “together between and amongst themselves to do a certain unlawful act, to wit: to keep open the storeroom of one Charles Boulos, at Uniontown, said county and state, and to dispose of goods, merchandi.se and fruits on the first day of the week commonly called Sunday, in violation of the Act of assembly of April 22, 1794, 3 Sm. L. 177, sec. 1,” and, in the second count, as follows: “Having been repeatedly arrested and having been repeatedly fined for the violation of said law, and having in each instance paid the fine of $4.00 each for some of said defendants, the said defendants, well knowing what was due to the commonwealth in each case for the violation of said act of assembly, did unlawfully, falsely, fraudulently, willfully and maliciously combine, confederate and agree together, between and amongst themselves, that certain ones of the above-named defendants should, after having violated said act of assembly and after having made themselves liable to a fine of $4.00, withdraw themselves from said commonwealth and from the jurisdiction of this court on Sunday, the same day the said act of assembly had been violated, in the nighttime and before they could be lawfully arrested, with the intent of cheating and defrauding the commonwealth of Pennsylvania of the sum of $4.00, the fine due the commonwealth in each case for the violation of the said act of assembly, and with the further intent of defeating and obstructing the due process of law, contrary,” etc.
The third count is not now necessary to consider, the court having charged that no one could be convicted thereunder; and the court having further instructed the jury that the other defendant named could not be convicted under the in *104 .dictment, the appellant was found guilty under the first and second counts of the indictment herein referred to.
sIt was clear from the testimony, and was not denied, that the defendant had habitually kept his store open, in violation of what is known as the Sunday law; that for a time he was regularly arrested and fined and paid the fines for himself and for each one of his clerks; that later, presumably to avoid costs, he appeared before the magistrate immediately after midnight and made information against his brother and another clerk and that his brother made information against him; that the fines were then duly imposed and paid by him, together with the costs; that subsequently, on three several succeeding Sundays, he employed on Saturday night two strange, unknown persons, who lodged in his house; that they assisted him in his business on Sunday, continuing from 8 o’clock in the morning until 10 o’clock at night; that they then disappeared; that the same persons were not employed on any succeeding Sunday and that, when sought for after midnight, they could nowhere be found in the immediate vicinity or in the surrounding region. The defendant, upon being interrogated as to who the men employed by him were and where they had gone, gave different answers. To one witness he said, in answer to the question as to where they were, “that he didn’t know, and then he said they are from above or about Fairmont,” Fairmont being in West Virginia. According to another. witness, who interrogated him as to who the men were, what were their names and where they had gone, he said: “They just come around; I don’t know the names; I don’t know where they went; I think in the neighborhood of Fairmont.” It is clearly apparent from the testimony that on the three several Saturday nights two strange men appeared who were not the same on any two occasions. They were employed by the defendant to violate the law; they lodged in his house and did confessedly violate the law on the following Sunday; that they all disappeared about the same time on Sunday night and could not be found in the vicinity after midnight. As explanatory of the manner in which they disappeared, the justice of the peace, before whom a number of hearings were had, testified: “On one oc *105 casion, after the hearing was over, I was talking^ with Mr. Boulos, and I said, ‘Charley, where are those fellows?’ He says, ‘I don’t know, maybe they have gone to Fairmont,’ and I says, “They couldn’t get out to Fairmont at that time of night,’ and he says, ‘Oh, they went on a freight train.’ ”
In the face of these striking coincidences and of the declarations of the defendant, which are not denied, the appellant claims that there was no evidence before the jury upon which conviction could be based, that is, that the jury would not be justified in inferring from these peculiar circumstances that there was confederation and agreement between the men, who appeared on Saturday night and who disappeared on Sunday night, and the defendant. It seems to us that the inferences arising from these facts are fairly deducible. This disposes of the most important question in the case.
It is alleged, however, that the second count of the indictment does not charge a criminal offense. If there were nothing in the count, except that which is stated by the appellant in regard to the fine, in charging the defendants “with the intent of cheating and defrauding the commonwealth of Pennsylvania of the sum of $4.00, the fine due the commonwealth in each case for the violation of said act of assembly,” when the fine had not in fact been imposed, there might be some force in the contention, but coupled as it is, “With the further intent of defeating and obstructing the due process of law, contrary to the form of the act of assembly,” even in case of a motion to quash, we think this count could have been sustained.
It is further contended by the appellant that his declarations could not be given in evidence as proof of a conspiracy, until the fact of confederation .and agreement together was established or accompanied by an offer to establish it. This might have been true, if the declarations had affected other parties, but they were surely evidence as against the defendant himself. The conviction of the other defendant named was not pressed, and the unknown defendants were not arrested, so that, as the case finally went to the jury, these declarations affected only the defendant himself. They were, *106 therefore, clearly competent as evidence against him: Commonwealth v. Zuern, 16 Pa. Superior Ct. 588; Commonwealth v. Stambaugh, 22 Pa. Superior Ct. 386; Heine v. Commonwealth, 91 Pa. 145.
If the defendant was properly convicted, as we think he was, we have nothing to do with the effect of that conviction, even if it was an efficient and effective means of keeping his store closed or, as the appellant puts it, of increasing the penalty for Sunday labor. He was not indicted for Sunday labor, but for a conspiracy to obstruct and defeat the laws relating to Sunday labor, which is a very different thing.
The case was fairly tried, the defendant’s points were properly disposed of and the facts were of such a character that the jury could fairly draw from them the inference of the defendant’s guilt. The case requires no further discussion.
The judgment is affirmed and the record remitted to the court below, to the end that the sentence of the court be fully carried into effect.