# Commonwealth *v.* Stephens, Appellant.

*Criminal law—Conspiracy—Manipulation of corporations.*

Where on the trial of an indictment against three persons for conspiracy to fraudulently manipulate the affairs of three corporations, all three defendants are convicted, a conviction against one will not be sustained by the appellate court, where the evidence tends to show that such defendant had no participation in the control of the corporations; that many of the transactions disclosed by the testimony took place before he was in any way connected with the companies as selling agent of their stocks; that at the trial no discrimination was made with reference to the relevancy of the evidence, as between the defendants; and that the jury re-

ceived no instructions with regard to its bearing on the guilt or innocence of the different defendants.

Acts and declarations of conspirators may be shown to affect their confederates, but such declarations or acts are not admissible to bind one not shown to be connected in some degree with the conspiracy. To render one liable under such a charge he must be proved to have participated in the general combination with all or some of the defendants.

Argued Nov. 11, 1915. Appeal, No. 232, Oct. T., 1915, by defendant, from judgment of Q. S. Berks Co., June Sessions, 1913, No. 168, on verdict of guilty in case of Commonwealth v. Charles A. Stephens, et al. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Indictment for conspiracy. Before WAGNER, J.

The facts are stated in the report of the case of Commonwealth v. Rothensies and in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were various instructions and rulings.

*Stephen M. Meredith,* for appellant.

*Samuel E. Bertolet* and *Harvey F. Heinly,* District Attorney, for appellee.

OPINION BY HENDERSON, J., October 9, 1916:

The appellant was indicted with nine others for conspiracy to defraud. Three of the defendants were tried and a verdict of guilty rendered against each of them. The conspiracy charged grew out of the organization and administration of three corporations, viz: The Reading Mutual Life Insurance Company; The Corporation Funding and Finance Company and The Reading Life Insurance Company. The indictment contained three

counts, the first of which charged the defendants with
having obtained control of the management and assets
of the three companies above named by virtue of the
ownership of stock, by holding the principal offices in
said companies, by means of a contract entered into April
30, 1909, between the Reading Mutual Life Insurance
Company and The Corporation Funding and Finance
Company whereby the latter became the sole agent for
the sale of life insurance in the said Mutual Life In-
surance Company for the compensation in the said con-
tract named and by other means; that by means of such
control of the Corporation Funding and Finance Com-
pany the defendants received into their possession large
sums of money and that having control of the Reading
Mutual Life Insurance Company they received other
large sums of money into their possession; that having
such control of the Reading Life Insurance Co. they
received into their possession other large sums of money;
that having possession of the said sums of money they
mingled the same in one fund and voted to themselves
large salaries, large commissions for the sale of the
stock of the Corporation Funding & Finance Co. and
of the Reading Life Insurance Company; that they sold
stock of said companies at prices above par and appro-
priated to their own use the amount over and above the
par value; that they issued to themselves shares of stock
in the said corporations without consideration; carried
on the books fictitious and worthless assets for the pur-
pose of concealing their true financial condition; that
they declared and paid to themselves and others divi-
dends of the Corporation Funding and Finance Co.,
out of the capital stock, to establish a fictitious market
value for the stock; that by large overdrafts they ob-
tained from the said companies large sums of money in
excess of the amounts due them; that they accepted on
subscriptions for the stock of the Reading Life Ins. Co.
notes, good and worthless, which they discounted at
various banks by putting up as collateral security there-

for certificates of deposit representing large sums of money belonging to the reserve fund of the Reading Mutual Life Ins. Co.; that the proceeds of these notes were deposited in the treasury of the Corporation Funding & Finance Co. and appropriated by the defendants to their own use; by all of which and other means the defendants unlawfully conspired to cheat and defraud the said Corporation Funding & Finance Co., the Reading Life Ins. Co., the Reading Mutual Life Ins. Co., their stockholders and members, of their money and property.

The second count charges the defendants with conspiring to defraud the said companies, their stockholders and members by taking and obtaining for themselves in the guise of salaries, commissions, premiums on stock sales, dividends, overdrafts, premiums on insurance policies, stock issues, control of the management of the said companies and by intermingling and misappropriation of large sums of money belonging to said companies, their stockholders and members.

The third count charges that the defendants in pursuance of the said conspiracy and in the manner and by the means aforesaid, unlawfully and fraudulently obtained from the said corporations, their stockholders and members a large sum of money. The evidence offered by the Commonwealth includes the testimony of thirty-nine witnesses and is voluminous. There are also seventy-three exhibits, covering the organization and administration of the corporations referred to, contracts, notes, letters, receipts, reports of auditors, financial statements, and numerous other documents. It appears from the evidence that the appellant was in no way connected with the organization of any of the corporations named nor was he at any time an officer of any one of them. A large part of the evidence in the case relates to transactions which occurred before he was in any way connected with any one of the companies and nearly all of the testimony relates to other persons and transactions than those with which he had anything to do. Much of

the evidence offered was quite material in support of the case of the Commonwealth against other persons indicted but had no relation whatever to the defendant on any other theory or supposition than that he adopted the conspiracy alleged to have been entered into by some or all of the other defendants.  The Commonwealth's contention as stated by the learned trial judge was that the defendants were parties to a scheme to defraud which had its inception in the incorporating of the Funding & Finance Co.; that the organization of that company was brought about by Rothensies and that the other defendants became parties thereto and therein conspired to bring about the results alleged in the bill of indictment; that the scheme had for its object the promoting of the Funding & Finance Co., the Reading Mutual Life Ins. Co. and the Reading Life Ins. Co. with the view of obtaining the control and handling of large sums of money which might be collected from subscribers to the stock of the Funding & Finance Co. and from persons to be insured in the Reading Mutual Life Ins. Co. and from subscribers to the stock of the Reading Life Ins. Co. with the intention of appropriating to themselves undue proportions of this money; that they took advantage of the opportunities afforded them by virtue of their respective connections with the companies to swell the salaries and commissions received by them for their various services and in order to carry out their purpose of securing the money of the corporations, the stockholders and members they misrepresented the value of the stock in said companies and declared dividends and made various statements of the financial condition of the Funding & Finance Co. and the Reading Mutual Life Ins. Co.  The defendant was employed as an agent to sell stock of the Funding & Finance Co.  He was employed by the president and sold the stock as an individual.  While acting in this capacity he received a commission on the amount of stock sold.  At a later time he acted as a manager of agencies on a salary.  There was some evidence to show that at

one time "Stephens and Snyder" were present at a meeting of persons who were talking over the matter of investing in the stock of the Funding & Finance Co. and that "they spoke in glowing terms of this proposition; told us that it was now paying dividends as I remember, of twenty-one per cent." This was in the latter part of October, 1911. It was also shown that Rothensies who had a contract with the company for the sale of stock employed the appellant to work under him for a commission and that at one time Rothensies caused his account with the company to be entered in the name of Stephens. That was said to be a special account representing money to which Rothensies was entitled under his contract with the Funding & Finance Co. The arrangement under which the appellant was to receive twenty-five per cent. commission became operative on October 7, 1911. That was to cover all expenses incurred in the sales. The Rothensies account was carried for a time in the name of "Stephens, Attorney"; for what reason, is not apparent although the evidence seems to show that Rothensies received the money. These transactions connect the appellant with some of the sales of stock long after the organization of the companies and the adoption by their officers and directors of the manner of doing business which was subsequently pursued. It is urged by the Commonwealth that the methods used to obtain directors of the company, the declaration of dividends by the Funding & Finance Co., the financial reports of the Funding & Finance Co. and of the Reading Mutual Life Ins. Co. and the management of the executive committees of all of the companies exhibit clear evidence of the scheme to cheat and defraud. But whatever may be the bearing of this evidence on the responsibility of other defendants it is clear that the appellant had no connection with any of the matters thus pointed out. The corporations were all the time in the control of directors who were legally responsible for their management. The executive committees are also charged under the by-laws

with certain responsibilities; but we fail to find in the conduct of either directors or executive committees anything for which the appellant is responsible. The evidence against him seems to have been that relating to the compensation he received in selling stock and the representations said to have been made as to the value of the Funding & Finance Co.'s stock made at the meeting at Lititz. But in the trial of the case no discrimination was made between the defendants with reference to the relevancy of the evidence; nor did the jury receive any instruction with regard to its bearing on the guilt or innocence of the different defendants. In a case involving the charge of conspiracy in a trial at which the taking of evidence consumed a week or more, where the evidence related to transactions at remote distances from each other mostly relating to other persons and where a large amount of documentary evidence was introduced the jury might easily overlook the relevancy of this evidence as applicable to a particular defendant, and that may have been done in this case. Objections were made on behalf of the appellant to the offers of the Commonwealth contained in the ninth and tenth assignments of error so far as they related to him and these objections were overruled. That which gives the crime of conspiracy its distinctive character is unity of purpose, unity of design, focalization of effort on a particular project by the persons named in the indictment: Com. v. Zuern, 16 Pa. Superior Ct. 588; Com. v. Stovas, 45 Pa. Superior Ct. 43. Acts and declarations of conspirators may be shown to affect their confederates, but such declarations or acts are not admissible to bind one not shown to be connected in some degree with the conspiracy. To render one liable under such a charge he must be proved to have participated in the general combination with all or some of the defendants: Com. v. Zuern, supra; Com. v. Duffy, 49 Pa. Superior Ct. 344. The charge of conspiracy is easily made and a suspicion or possibility of guilty connection is not to take the place

of evidence of the fact and thus permit the introduction of evidence wholly unrelated to the acts of a particular defendant. It is impossible of course, to present the whole case in one offer, and ordinarily impracticable, by a single proposition of proof, to include all of the defendants, but where the charge is a general combination and the evidence offered tends to establish such combination as against particular defendants to the exclusion of other defendants such offer should apply only to those shown to be in the combination. The whole charge set forth in the first count of the indictment which specifies the respects in which the defendants were conspirators relates to the organization and management of the three corporations above named and the evidence shows plainly that if a conspiracy existed as charged the project was organized and the business of the corporations conducted for a long time before the appellant was heard of in connection with the Corporation Funding & Finance Co. It was apparently the intention of the Commonwealth to charge and to prove that the enterprise initiated and undertaken by Rothensies and some of his associates was fraudulent from the beginning and that their management of the respective companies was in accord with their criminal intention. The case against the appellant stands on a different footing. He had no control over the corporations and acted merely under contract for an agreed compensation. Perhaps a jury might say that because of the amount of his compensation or the character of the representations made at the meeting referred to he intended to defraud and that he was in conspiracy with one or more of the other defendants to that end and evidence bearing on that subject would be admissible but that he should be charged with responsibility for the conduct of the other defendants or for their acts and declarations leading up as the Commonwealth claims to a consummated conspiracy is not consistent with the principles involved in the liability of conspirators: Bal-

lantine v. Cummings, 220 Pa. 621. We have not found in the evidence a statement of facts tending to show that he. had knowledge of a criminal purpose in the organization or management of the companies nor any responsibility beyond that which might be inferred from the amount of compensation received by him or the representation as to the value of the stock alleged to have been made at a particular time. If his criminal connection with the other defendants or any of them is to be inferred such inference arises from this fragment of the evidence introduced in the case., As the case was presented to the jury it was permitted to consider the whole of the evidence as tending to establish the guilt of the defendant. No instructions were given with reference to that which might have a bearing directly against the appellant and the evidence of the acts and declarations of some of the other defendants probably weighed against him. The offers of testimony in the ninth and tenth assignments should have been limited to the persons which it involved in the absence of evidence to show that the appellant became a party to those acts and therefore responsible for them.

The judgment is, therefore, reversed and a new venire awarded.