## Helser *versus* McGrath.

1. Evidence of declarations of one of two or more persons combining to defraud another, is not admissible against the absent party, until some evidence of combination; nor is it generally of declarations made long after the transaction.

2. Goods levied on as Myers's, were claimed by Helser to belong to him; in suit by Helser against the sheriff, the question being fraud between Helser and Myers, the court charged:—"You will in determining this question of fraud, consider not only the declarations of Helser, but those also of Myers. If the declarations of Helser are even slight evidence of collusion between him and Myers, then the declarations of Myers are to receive the weight to which, in your judgment, they are entitled." *Held*, to be correct.

May 11th 1868. Before THOMPSON, C. J, AGNEW and SHARSWOOD, JJ. STRONG and READ, JJ., absent.

Error to the court of Common Pleas of *Franklin county*: Of May Term 1868, No. 87.

This was an action of trespass *de bonis asportatis*, by Solomon Helser against William McGrath, who was sheriff of Franklin county. The writ issued August 9th 1862. The case had been in the Supreme Court before, when the judgment was reversed (2 P. F. Smith 531). The plaintiff's cause of action was levying and selling 450 bushels of rye, which he alleged was his property, under an execution against Jacob Myers and John Zimmerman.

The property was sold by the sheriff to John Zimmerman; the plaintiff was at the sale and gave notice that it belonged to him. It appeared further, by plaintiff's witnesses, that the rye had been hauled from his store at Mill Stone Point, in Maryland, to

[Helser *v.* McGrath.]

Secrist's Mill, in Franklin county, Pennsylvania; Myers paid for the hauling. It was moved because a Maryland regiment had possession of the warehouse. On cross-examination one of plaintiff's witnesses, a clerk in the store, said Myers employed him and fixed his salary; Myers managed and controlled the store; bought and sold as if it belonged to himself; he bought and sold in the name of Helser. There was evidence by plaintiff that in 1855 or 1856, he had bought the store goods of J. Eichelberry, deceased, from his administrator, and moved the goods from Myers's store to Eichelberry's, and united the goods with those purchased of the administrator. On cross-examination it appeared that Myers after the purchase, up to 1861, transacted the business at Eichelberry's store. There was much evidence to show that the store and the rye were Helser's, and much brought out on cross-examination to show that the business was managed by Myers.

The defendant gave evidence by several witnesses of declarations of Helser, about the end of 1861 or beginning of 1862, that the rye belonged to Myers; also, that Myers became insolvent about the time his goods were united with Eichelberry's, and declarations of Helser that he would get him out of his difficulties.

The defendant offered to prove that the store was conducted by Myers as his own; that he paid his debts out of it, claimed it as his own; offered to sell it; admitted it was not Helser's; also, that Myers had kept store at Mill Stone Point in his own name; that Myers declared in 1860 that he had been doing business under Helser's name, &c.; the declarations were not made in the presence of Hesler. The plaintiff objected to the offer; it was admitted and a bill of exceptions sealed.

The plaintiff's 3d point, with the answer, was:—

Point: "The declarations and actions of Myers about the store, in the absence of Helser, cannot affect his title; unless there was a combination and collusion between Helser and Myers to cheat the creditors of Myers, and there is no sufficient evidence of such combination and collusion independently of the declarations and conduct of Myers."

Answer: "The declarations of Myers about the store in the absence of Helser cannot affect Helser's title unless there was a combination and collusion between them to cheat and defraud the creditors of Myers, and to this extent we affirm the point, but we cannot, under all the facts in this case, interfere with your right to determine whether there is sufficient evidence of such combination and collusion under the instruction we have already given you on this part of the case."

In the general charge King, P. J., said:—

"This evidence, in connection with the proof of the insolvency of Myers, and the fact that Jacob Myers was in court, a compe-

[Helser *v.* McGrath.]

tent witness for plaintiff, and fully cognisant of all the facts and circumstances relating to the transfer of the store and the ownership of the rye, and was not called to the stand, was presented to the court as such evidence of collusion between Myers and Helser, as authorized the admission in evidence of the declaration of Myers; and under the rule that even slight evidence of collusion will justify the admission of such proof, we have allowed the defendant to give evidence of Myers's declarations. [You will, therefore, in determining this question of fraud, consider not only the declarations of Helser, but also those of Jacob Myers. If the declarations of Helser are even slight evidence of collusion betweeen him and Myers, then the declarations of Myers are to receive the weight to which, in your judgment, they are entitled."]

There was a verdict for the defendant.

The plaintiff having sued out a writ of error, assigned for error the admission of the evidence objected to, the answer to his point and the portion of the charge included in brackets.

*G. W. Brewer* and *J. McD. Sharpe*, for plaintiffs in error, cited, as to the admission of the evidence: 1 Greenl. on Ev., § 3; McCaskey *v.* Graff, 11 Harris 325; Benford *v.* Sanner, 4 Wright 9; Thomas *v.* Maddan, 14 Wright 265; Commonwealth *v.* Eberle, 3 S. & R. 9; Price *v.* Junkin, 4 Watts 86; Rogers *v.* Hall, Id. 359; Gibbs *v.* Neely, 7 Id. 305; Kimmell *v.* McRight, 2 Barr 38; Bredin *v.* Bredin, 3 Id. 82; Kelsey *v.* Murphy, 2 Casey 78; McDowell *v.* Rissell, 1 Wright 164; Scott *v.* Baker, Id. 330; Peterson *v.* Speer, 5 Casey 479; Kinzer *v.* Mitchell, 8 Barr 64.

*F. M. Kimmell,* for defendant in error, cited McCaskey *v.* Graff, Peterson *v.* Speer, McDowell *v.* Rissell, *supra.*

The opinion of the court was delivered, May 20th 1868, by

THOMPSON, C. J.—We need not review at length the able and careful argument of the learned counsel for the plaintiff in error made to prove that the declarations of one of two or more persons charged with combining or conspiring to defraud another or others, are not evidence against the absent party or parties, until some evidence of combination for the purposes charged be given; or that declarations made long after a transaction has taken place and is closed are generally inadmissible. Neither of these objections meets the true position of the case in hand, under the evidence. If there ever was a combination to cover Myers's property, it continued and existed at the time the declarations offered to be proved, were made. This was the defendant's theory, and the testimony certainly favored it. The connection between Helser and Myers took place in 1854, after an alleged sale by the latter to the former, of a small stock of goods he had at Mill Stone Point, in Maryland,

[Helser *v.* McGrath.]

which was united with a stock the plaintiff afterwards purchased from the administrator of Eichelberry, and the two stocks thus united were afterwards kept by Myers in the storehouse of Eichelberry in the name of Helser. Myers was insolvent at the commencement, and so continued. Repeated declarations of Helser were given before and after the offer, which is the subject of the first exception made, to the effect that the store, from the proceeds of which the rye in question was purchased, belonged to Myers; that he (Helser) was trying to help him; that the rye was Myers's, &c., &c. This cleared the way for Myers's declarations. There was therefore, we think, sufficient evidence of combination to go to the jury, and the testimony was receivable. The defendant insisted that the original design, viz.: the protection of Myers against his creditors, still existed, and the combination continued. The testimony was very strong to this effect. The court was therefore entirely right in the admission of the testimony.

Upon the same principle the answer of the court to the plaintiff's 3d point was faultless, and the same must be said in regard to that portion of the charge of the learned judge which constitutes the 3d assignment of error. The judgment must be affirmed, no error appearing on the record.

Judgment affirmed.