## McCabe *versus* Burns and Stevenson.

1. B. & S. projected an oil company and induced M. to subscribe to the stock. The land on which it was based was afterwards conveyed to the company by the vendor of B. & S. M. sued them to recover the money paid for his subscription, on the ground of their fraudulent misrepresentations. It was not necessary that M. should first tender a reconveyance of the land.

2. The company was not incorporated. No estate passed by the conveyance and M. had no interest legal or equitable in the land.

3. B. & S. had given M. a receipt for his subscription, but no stock had been issued to him; he was not bound to tender the stock nor the receipt which was the evidence of his payment.

4. There was evidence that B. & S. acted in concert and made false statements in procuring the subscriptions of M. and others. Evidence of the acts and declarations of B. & S. or either of them, either in the presence or absence of M., if tending to throw light on the transaction or corroborate testimony already in, was admissible.

November 1st 1870.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* Of October and November Term 1869, No. 135.

This was an action of assumpsit brought, July 13th 1867, by William P. McCabe against John Burns and Samuel Stevenson, to recover $250 paid by the plaintiff as part of the subscription price of a share of stock in an oil company, paid under fraudulent misrepresentations.

The case was tried, July 7th 1869, before Kirkpatrick, J.

The plaintiff gave in evidence this receipt :—

"Middletown, January 26th 1866.

"Received of William P. McCabe $250, the first instalment on one share of stock in the Middletown Oil Company. The company lands are located on the Little Beaver creek, St. Clair township, Columbiana county, state of Ohio, consisting of 8 acres and 20 perches, in fee simple.

"JOHN BURNS; SAMUEL STEVENSON."

He then gave in evidence a deed dated March 1st 1866 from Daniel Smith to the Middletown Oil Company for certain premises containing 8 acres 20 perches in Columbiana county, Ohio, the consideration stated in the deed being $26,000.

The plaintiff testified that Burns asked him to enter into "something" which he and Stevenson had for "his friends and neighbors," which would treble their money as soon as they got possession, that plaintiff should stand on the "ground floor," as he and Stevenson did; they were not making a cent. He described to plaintiff where the land which was the subject of the project, was. He said they were to pay $26,000 for it. Plaintiff would not agree to go in unless he could get his money out before spring.

[McCabe v. Burns.]

Burns said he would guaranty his money to him in thirty or sixty days. At the date of the receipt at a meeting for the purpose of getting subscribers to the stock, Burns told Stevenson to take plaintiff's money, he paid $250 to Stevenson who gave him a receipt. The plaintiff took one share of stock at $500 and gave his note for $250; Burns took the note. At this meeting Burns and Stevenson both being present, the same representations were made as to the price they were to pay for the land. There was evidence that Burns and Stevenson had paid a much smaller sum for the land; that the property was not located where it had been represented that it was; that the Middletown Oil Company was not in existence, and of other facts tending to sustain the plaintiff's case.

During the trial the plaintiff made the following offers of evidence:—

A. To prove "that the money subscribed and paid on the same night and terms as that by the plaintiff, was afterwards refunded by the defendants to several of the subscribers, to wit, Robert Gracey, William Lee *et al.*, on the ground that defendants had not properly or correctly represented the location of the land, or given the parties the correct amount of purchase-money thereof.'

B. To prove "that one of the defendants, John Burns, promised to pay him, the witness on the stand, the money back that he subscribed and paid on January 27th 1866, on the same terms as the plaintiff; and the reason that the defendant made said promise was because he had misrepresented the value and location of the property, and that if he, the witness, would keep quiet and not tell or alarm the other subscribers, he would give him his money back."

C. To prove "that at the time John Burns, one of the defendants, was trying to induce persons to subscribe to the stock of the company mentioned, he represented to witness on the stand and others, that the property was located on Little Beaver creek, near the Sugar Tree Derrick, just below the mouth of Island Run, and that they, defendants, had agreed to pay Daniel Smith for the property the sum of $26,000, or $3200 an acre. That he was only an agent for the company in buying the property, and made nothing by it. This, with the evidence already in, and to be followed by other evidence, to show that in point of fact defendant had agreed to pay a less sum for the property, and that it was not located at the place represented."

D. "To file of record, for the use of defendants upon the payment of any sum for which a verdict may be recovered against them in this case, a quit-claim deed from the plaintiff, William P. McCabe, to the defendants, John Burns and Samuel Stevenson, dated June 8th 1869, duly executed, acknowledged and stamped. This filed of record not because the plaintiff has any legal or equitable title to the land therein described, but so

that defendants, in case of a recovery against them, may take any supposed title the plaintiff may have therein, on payment of such recovery.   This deed is asked to be filed, subject to delivery as the court may direct."

E.  " To prove, that about August 1866, after the parties who held stock or interests in the property mentioned, and known as The Middletown Oil Lands, discovered that the representations made by defendants at the time they advanced the money, were untrue, they abandoned the premises, and the defendants removed the engine and machinery from the premises, and sold them to James Rees to pay a debt they had contracted with him.".

All these offers were objected to by the defendants, rejected by the court, and several bills of exception sealed.

The plaintiff having closed his case, the defendants moved for a nonsuit, on the ground that he could not maintain the suit without having tendered a reconveyance of the land conveyed by Smith.   The nonsuit was ordered.   The court afterwards discharged a rule to take it off.

The plaintiff took a writ of error and assigned for error the rejection of his offers of evidence, and entering the judgment of nonsuit.

*J. Barton* and *R. Woods* (with whom were *White & Slagle*), for plaintiff in error, referred to Pearsoll *v.* Chapin, 8 Wright 9 ; Simons *v.* Vulcan Oil Co., 11 P. F. Smith 202 ; Markley *v.* Swartzlander, 8 W. & S. 172 ; Hall *v.* Holmes, 4 Barr 251.

*J. H. Bailey* and *T. M. Marshall*, for defendants in error, referred to Pearsoll *v.* Chapin, *supra ;* McElhenny's Appeal, 11 P. F. Smith 188.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—This case does not come within the rule laid down in Pearsoll *v.* Chapin, 8 Wright 9, which decides that where a sale of land has been induced by the false and fraudulent representations of the vendor, the vendee must first tender a reconveyance before he can recover back the price paid.   Here the plaintiff's subscription, on which the money sought to be recovered was paid, was not for land, but for stock in a company to be organized, of which the defendants were the promoters.   The land purchased by the defendants was not conveyed to the plaintiff, and the other subscribers for stock, but to the Middletown Oil Co.; and if, as the evidence shows, the company was never incorporated, no estate passed by the conveyance, and the legal title still remains in the grantor.   It is clear, then, that the plaintiff, under his contract of subscription, had no such legal or equitable interest in the land as made it his duty to tender a recon-

[McCabe *v.* Burns.]

veyance or release before he can recover back the money which he paid on account of his subscription, if it was procured, as alleged, by the false and fraudulent representations of the defendants. Nor was the plaintiff bound to make a tender of the stock for which he subscribed before he can recover back the money which he paid on his subscription, even if the rule laid down in Pearsoll *v.* Chapin is applicable to the sale of personal property, for no stock was ever issued to him. All that he received from the defendants was their receipt for the money which he paid, and he was not bound to surrender the evidence of its payment before he could recover the money back, if it had been fraudulently obtained. The court, therefore, erred in applying the rule to the contract of subscription in this case, and as there was abundant evidence to go to the jury, tending to show that the subscription was procured by the false and fraudulent representations of the defendants, the question should have been submitted to them with proper instructions.

The evidence proposed to be given by the plaintiffs, under their second and third offers, marked "B" and "C," should have been received. At the time these offers were made and rejected by the court, the plaintiff had given evidence tending to show that the defendants acted in concert in procuring, from the plaintiff and others, subscriptions for stock in the company they proposed to organize, and that both had made false representations in regard to the location of the land, and the price for which it could be obtained, and the consideration actually paid for it. Under this state of the evidence, it was competent for the plaintiff to show the acts and declarations of either of the defendants, whether done or made in the presence or absence of the plaintiff, or of each other, if they tended to corroborate the testimony already received, or to shed any light on the character of the transaction. We think that the evidence offered by the plaintiff was both relevant to the issue and corroborative of the testimony already given.

Our only doubt in regard to the fifth offer, marked "E," arises from the fact that it does not clearly appear, from the language of the offer, that the plaintiff was one of the parties referred to as having abandoned the property, after they discovered that the representations made by the defendants, at the time they advanced the money, were untrue. If the plaintiff was one of the parties intended by the offer, the evidence ought to have been received, for it tended to show a rescission of the contract on his part, and the defendants' acquiescence therein by taking possession of the personal property on the premises and disposing of it as their own. But if the plaintiff was not one of the parties referred to, the offer was properly overruled. It is so doubtful whether the offer, as made, included the plaintiff, that we cannot say that the court erred in overruling it.

[McCabe *v.* Burns.]

We see no error in the rejection of the other offers of evidence of which the plaintiff has any reason to complain.

But for the errors in overruling the offers of evidence particularly noticed, and in refusing to set aside the judgment of nonsuit, the judgment must be reversed and the record remitted for a new trial.

Judgment reversed, and a *procedendo* awarded.