## Commonwealth *v.* William Strauss, Appellant.

*Criminal law—Setting fire to dwelling house with intent to defraud insurance companies—Conspiracy—Act of March 31, 1860, P. L. 382, section 139—Evidence—Declarations of co-conspirator—Statute of limitations.*

In the trial of two indictments, one charging defendants with setting fire to a dwelling house with intent to defraud certain insurance companies, and the other charging the defendants with conspiracy to cheat said insurance companies, by such burning, it appeared that the fire was of incendiary origin. Various portions of the interior of the house had been saturated with gasoline. There was evidence that large quantities of gasoline had been purchased by one of the defendants shortly before the fire. There also was evidence that, after the fire, one of the defendants stated that he had bought the gasoline and had carried it into the house, and that some of the contents of the house were removed prior to the fire.

Under such circumstances the case was for the jury and a conviction for conspiracy will be sustained, although the defendants were acquitted of the actual burning.

In such a prosecution the conviction for conspiracy is not inconsistent with an acquittal on the indictment charging defendants with setting fire to the dwelling house with intent to defraud.

The gist of the offense in conspiracy is the unlawful combination and the offense is complete as soon as the combination is formed.

The declarations of a conspirator are evidence against himself and his associates when made during the performance of the fraudulent transactions which constitute the crime charged, for they form a part of such transactions and as such may properly be admitted; but when not made during the progress of the fraudulent scheme, but afterwards, to a third party, as to what had previously been done, they are not evidence. Only those acts and declarations are admissible, which are done and made while the conspiracy is pending and in furtherance of its object.

In such a prosecution, admissions made by a co-conspirator after the fire but while defendants were trying to obtain a settlement with the insurance company are admissible in evidence; the object of the conspiracy not having been accomplished.

The indictment charged the conspiracy within the statutory period.

Where in conspiracy an overt act is done within two years, and said act is but one of a series of acts committed by the parties evidently in pursuance of a common design and to carry out a common purpose, such acts are evidence, provided they tend to show that the last act was a part of the series and the result of an unlaw-

ful combination; and such evidence may satisfy a jury of the existence of a conspiracy at the later period.

*Indictment—Presentation to grand jury without previous commitment.*

An indictment will not be quashed because it was submitted to a grand jury, without a previous binding over or commitment, where it appears that the indictment was presented by express leave of the court under circumstances fully justifying the granting of the permission.

Argued March 9, 1926. Appeal No. 27, October T., 1926, by defendant, from judgment of Q. S. Northampton County, February T., 1925, No. 119, in the case of Commonwealth of Pennsylvania v. William Strauss. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictments for setting fire to a dwelling house with intent to defraud certain insurance companies, and for conspiring and agreeing to defraud said insurance companies. Before STEWART, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant was acquitted of the charges contained in the indictment charging him with setting fire to the dwelling house, but was convicted of the counts contained in the indictment charging conspiracy. Defendant appealed.

*Error assigned,* among others, was the charge of the court.

*E. J. Fox,* and with him *Frank P. McCluskey, Asher Seip,* and *Smith & Paff,* for appellant.—The evidence was insufficient to establish a conspiracy: Commonwealth v. Lawrence, 282 Pa. 131; Wilson v. Commonwealth, 96 Pa. 56; Commonwealth v. Tilly, 33 Pa. Superior Ct. 35; Morrow v. Morrow, 61 Pa. Superior Ct. 208; Commonwealth v. Stephens, 64 Pa. Superior Ct.

429; Commonwealth v. Bartilson, 85 Pa. 482; Commonwealth v. Kaiser, 184 P'a. 493.

*T. McKeen Chidsey,* and with him *Horace M. Schell,* and *Robert E. James,* District Attorney, for appellee.—There was sufficient evidence of conspiracy: Lowe v. Dalrymple, 117 Pa. 564; Commonwealth v. Zuern, 16 Pa. Superior Ct. 588; Rogers v. Hall, 4 Watts 361; Bredin v. Bredin, 3 Pa. 81; Confer v. McNeal, 74 Pa. 112.

OPINION BY CUNNINGHAM, J., July 8, 1926:

In the court below two indictments were returned against William Strauss, appellant herein, Samuel Strauss, his brother, and Stewart Mathias, an employee of William Strauss, appellants in Nos. 28 and 29 October Term, 1926, of this court, in the first of which they were charged with setting fire to the dwelling house of the said William Strauss, with intent to burn the same and with intent to defraud certain insurance companies; and in the second, with conspiring and agreeing to cheat and defraud said insurance companies by setting fire to and burning said dwelling house, in order to obtain the insurance on it and its contents.

The first indictment was drawn under Section 139 of the Act of March 31, 1860, P. L. 382, which provides, inter alia, that, "every person, being the owner, tenant or occupant of any house, outhouse," etc., "who shall willfully burn or set fire thereto, with intention to burn the same, with an intention thereby to defraud or prejudice any person, or body politic or corporate, that hath underwritten, or shall underwrite, any policy of insurance thereon, or on any moneys, goods, wares or merchandise therein, shall be guilty of a misdemeanor," etc. It was the theory of the Commonwealth under this indictment that William Strauss was the principal and Samuel

Strauss and Stewart Mathias, were accessories before the fact in the commission of the crime charged. The jury was sworn, with the consent of defendants, to try both cases at the same time. The appellants were acquitted of the charge contained in the first indictment and convicted of the conspiracy charged in the second, and each has appealed from the sentence pronounced against him. The only assignment of error requiring any extended discussion is the first, under which it is contended that the learned trial judge erred in that portion of his charge under the indictment for conspiracy which related to the consideration by the jury, and the probative effect, in that case, of certain statements and admissions, claimed to have been made by certain of the defendants in the absence of his alleged co-conspirators. A recital of some of the facts appearing from the evidence is essential to the proper disposition of this assignment. The dwelling house in question was located, together with several barns and outbuildings, upon a tract of approximately two and one-half acres along the State Highway running from Bethlehem to Easton, Northampton County. Some years ago this property was purchased by one, Maioriello, from the United States Housing Corporation under articles of agreement and in January, 1922, the said William Strauss acquired his equitable interest therein for $4000, and in August, 1925, paid an additional sum of $3500, the balance of the purchase price, and received the deed for said property. The dwelling house was occupied by William Strauss and his family. William and Samuel Strauss and one, George Wagner, were associated in the business of manufacturing certain chemical compounds in one of the barns.

During the early morning of Saturday, May 5, 1923, the said dwelling house and its contents were partially destroyed by fire, which was concededly

of incendiary origin. Various portions of the interior of the house and some of the contents had been saturated with gasoline and oil and clothing soaked with these inflammables had been strewn through the halls and from room to room as a fuse to conduct the fire from one room to another. Two five-gallon cans and three five-gallon bottles, one broken, were found in different rooms of that portion of the house not entirely consumed, all of which had contained oil or gasoline and one of which still contained a quantity of gasoline.

One week prior to the date of the fire William Strauss closed said dwelling house and went with his wife and child to Atlantic City, where he remained until after the fire, returning home on the evening of May 5, 1923. Between November, 1922, when he moved into said house, and the date of the fire, William Strauss made some improvements to the property and additions to the contents of the dwelling and increased the insurance on the house from $12,000 to $15,000, and upon the contents from $5,000 to $12,500. It was contended by the Commonwealth that some of the contents were removed prior to the fire. Having failed to make an adjustment with the insurance companies which had insured the said contents, and the limitation period in the policies being about to expire, William Strauss brought suits against the companies on May 5, 1924, which are still pending.

William Strauss, as stated, was in Atlantic City at the time of the fire and there was no direct evidence that either Samuel Strauss or Stewart Mathias, the other appellants, actually set fire to the house. There was evidence of the purchase of large quantities of oil and gasoline two or three weeks before the fire by William Strauss; that Stewart Mathias a few days before the fire moved a can of gasoline from the barn to the house; that Samuel Strauss

had been given the key to the east door of the house
by his brother when he left for Atlantic City, which
key was found in the lock by the firemen when they
reached the scene; and there was evidence of many
other circumstances tending to support the charges
contained in said indictments. The credibility of
some of the witnesses for the Commonwealth, notably
the said George Wagner and his wife and daughter,
is severely attacked by the learned counsel for ap-
pellants, who point out that Wagner had some diffi-
culties with the Strauss brothers over the above
mentioned chemical business and was alleged to have
embezzled large sums of money from them, but their
credibility was for the jury.

It would serve no good purpose to review in detail
the evidence adduced and it is sufficient to say that
we agree, after an examination of the material por-
tions of the testimony, with the statement made by
the learned trial judge in his opinion refusing a new
trial and overruling the motion in arrest of judgment
to the effect that there was sufficient evidence to have
warranted the jury in convicting appellants upon
the first indictment. In view, however, of the absence
of William Strauss at the time of the fire and of the
fact that the act under which the first indictment was
drawn is directed against an owner or occupant of
the house, and the further fact that there was no
direct evidence that either of the other appellants
actually set fire to the building it is not difficult to sur-
mise why the jury rendered a verdict of not guilty
with respect to the charges contained in the first in-
dictment. It by no means follows, however, that the
acquittal of appellants upon this indictment should
logically compel a verdict of not guilty on the sec-
ond, as so ably contended by their learned counsel.
In Wilson v. Commonwealth, 96 Pa. 56, the defend-
ants were charged in the first count of the indict-
ment with a conspiracy to enter upon certain premises

described therein and to hold and keep possession of the same and in the second and third counts with forcible entry and detainer. They were convicted of the conspiracy and acquitted on the second and third counts. It was there held that the conviction for the conspiracy was not inconsistent with the acquittal of the charge of forcible entry and detainer. Mr. Justice PAXSON there said: "The legal effect of such a record is to show that the defendants conspired to commit the act but did not accomplish their object. They may be punished for their unlawful agreement. The gist of the offense in conspiracy is the unlawful combination, and the offense is complete the moment such combination is formed." To the same effect is the opinion of this court in Commonwealth v. Gormley et al., 77 Pa. Superior Ct. 298, in which the defendants were indicted for conspiring to make false returns of an election and for the insertion of false figures in the tally sheets. The jury returned a verdict of guilty as to the conspiracy and not guilty of inserting the false figures. In that case TREXLER, J., speaking for this court, said that the acquittal on the second count did not operate as an acquittal on the first. See also Commonwealth v. Corcoran, 78 Pa. Superior Ct. 430.

As we view this case the jury by their verdicts said that they were satisfied beyond a reasonable doubt that appellants had conspired to defraud the insurance companies by burning the dwelling and its contents and had made the necessary preparations but that they were not satisfied that the evidence for the Commonwealth was sufficient to warrant a conviction of the actual burning. A part of the Commonwealth's testimony consisted of alleged declarations and admissions made by Stewart Mathias, one of the appellants, after the fire and in the absence of his co-defendants. The wife of the above mentioned George Wagner testified, inter alia, that in March,

1924, the said Stewart Mathias, who was then angry with William Strauss over his failure to give him title to a certain automobile, made certain declarations to her relative to the fire, which declarations were to the effect that certain linens, cut-glass and other contents of the dwelling had been removed prior to the fire; that William Strauss owed him a good living and he was going to have it; that the gasoline had been bought at the R. and R. Garage and delivered to a little shanty outside the barn; that Mathias had carried it into the barn; that he was the man who carried it over to the house; and that Samuel Strauss had asked her, at some time subsequent to her conversation with Mathias, not to say anything about the fire, to which she had replied that what she would say depended altogether on how they treated her husband, etc. Mrs. Florence Wanamaker, a daughter of the Wagners, testified that she met the said Stewart Mathias about the same time at the Moose Clubhouse and continued thus: "He was speaking of an automobile that Will Strauss gave him, and it was an old one I think it was, and he wanted the title to it to get license plates, and he said if he wouldn't give it to him he would come clean and tell just what he knew—that is, he spoke of the fire—and he said the china and the linen and the good wearing apparel had been taken out of the house previous to the fire. Q. What else did he say, if you remember? A. He said the oil and the gas was in the barn at least two and a half or three weeks before the fire."

In charging the jury under the first indictment the learned trial judge expressly instructed them with respect to these statements and admissions and certain declarations alleged to have been made by William Strauss, in the nature of threats against Wagner, that they must confine the alleged declarations, if they believed they were made, "so far as

the probative effect is concerned, that is, their tendency to prove guilt, solely against the person who uttered the words'' and that they must not be considered as evidence against the other defendants unless they were present at the time. After concluding the portion of the charge relating to the first indictment the trial judge took up the charge of conspiracy and after adequately defining the offense and the character of evidence necessary to support a conviction and directing attention to the necessity on the part of the Commonwealth of producing evidence which, although circumstantial, ''leads to the inevitable conclusion that they were guilty of this conspiracy,'' proceeded as follows: ''I have said that the evidence which the Commonwealth relies on to establish the direct participation of these defendants is the same evidence which they rely on to establish this crime of the conspiracy. There is only one thing that strikes me as being different and that is on this question of the declarations. If you should find that there was prior to the fire this conspiracy and believe from the evidence that it was established beyond a reasonable doubt by the Commonwealth, and that the conspirators were William Strauss, Samuel Strauss or Stewart Mathias, then in that case the declarations of any one of them would be evidence as against the others, and the rule is different from the rule that I laid down to you in the case of attempt to defraud an insurance company.'' It is this portion of the charge which is assigned for error and the complaint is made that the court below erred in not saying that the declarations of one conspirator are only evidence against the others when made during the progress of the conspiracy. It is only fair to the learned trial judge to say that the counsel for defendants did not direct his attention to this alleged omission at the conclusion of the charge although the court then said, ''Did I make any mistakes in dates or names?'' To which counsel replied,

"I don't think so"; nor was any objection made to the admission of the evidence of the declarations generally, or any request that it be received only against the declarant. We do not intend, however, to dispose of the assignment upon the ground that the attention of the court not having been directed to the alleged error at the time, it cannot now be considered.

The rule undoubtedly is that the declarations of a conspirator are evidence against himself and his associates when made during the performance of the fraudulent transactions which constitute the crime charged for they form a part of such transactions and as such may properly be admitted; but when not made during the progress of the fraudulent scheme, but afterwards, to a third party, as to what had previously been done they are not evidence. Only those acts and declarations are admissible under the rule which are done and made while the conspiracy is pending and in furtherance of its object. After the conspiracy has come to an end, whether by success or failure, the admissions of one conspirator by way of narrative of past facts are not admissible in evidence against the others: Heine v. Commonwealth, 91 Pa. 145; Commonwealth v. Zuern, 16 Pa. Superior Ct. 588; Logan v. United States, 144 U. S. 263; Brown v. United States, 150 U. S. 93. There can be no doubt about the rule. The question arising in this case relates rather to its applicability to the facts. The conspiracy indictment charges the conspiracy as existing on May 5, 1923, the date of the fire, and as being a conspiracy to defraud the insurance companies by burning the dwelling house and contents in order to obtain the insurance thereon. The indictment was found on April 14, 1925, and the trial judge charged the jury with respect to the statute of limitations as follows: "And that conspiracy must have taken place, in your minds, after the fourteenth day of April, 1923, which is two years prior to the date that this indict-

ment was found. If you should find that the conspiracy took place before that then the statute of limitations would apply and your verdict would have to be a verdict of not guilty." The indictment charged the conspiracy within the statutory period and as stated by Mr. Justice PAXSON in Commonwealth v. Bartilson et al., 85 Pa. 482: "Acts and declarations of the parties prior to the statutory period may be given in evidence, provided they tend to show a conspiracy existing at the time charged in the indictment. It is true they would not be admissible for the purpose of proving a distinct crime barred by the statute. But where in conspiracy an overt act is done within two years, and said act is but one of a series of acts committed by the parties, evidently in pursuance of a common design and to carry out a common purpose, such acts would be evidence, provided they tend to show that the last act was a part of the series and the result of an unlawful combination; and such evidence may satisfy a jury of the existence of a conspiracy at the later period. And this though some of the prior acts may have occurred at a time when, as an independent conspiracy, it would have been barred by the statute. For, as before said, the overt acts are the evidence from which a conspiracy may be inferred." See also Commonwealth v. Sanderson, 40 Pa. Superior Ct. 416, and Commonwealth v. Snyder, 40 Pa. Superior Ct. 485.

The main question under the proofs in this case is whether the conspiracy charged had come to an end even at the time of the trial. It appears from the evidence that the declarations in question were made after the fire but before the suits had been brought on the policies. As the evidence discloses, William Strauss immediately after the fire prepared his proofs of loss and endeavored in every way to obtain the insurance moneys and finally brought suit on the last day of the year following the fire. The unlawful

combination, the gist of the offense and the thing upon which the statute of limitations operates was complete when formed, but the fraudulent design evidently continued and, as the statements and admissions tended to prove the combination and to corroborate testimony already given, they were clearly admissible generally.

It should also be noted that at the time this evidence was received there was already before the court evidence sufficient to establish, prima facie, the conspiracy; the fact of the fire and the careful preparations for its incendiary origin and the acts of the appellants in connection therewith had been shown. We do not see how the trial judge could have charged the jury that the conspiracy ended at the time of the fire or that it had ended even at the time of the trial of this case. We have not discussed all the declarations in detail but the jury was justified in finding that some of them were admissions, and that others were made in furtherance of the conspiracy charged in the indictment. The following language of our present President Judge in Commonwealth v. Zuern, supra, at page 605, is applicable to the facts in this case: "The appellants further complain that declarations, made after the completion of the transactions with which the conspiracy was connected, were admitted. We agree with the court below in holding that the transactions were not completed. The conspiracy involved the distribution not only of moneys wrongfully procured, but also of other moneys payable after the paving contracts were paid by the borough. Some of the latter had not yet been paid when the declarations admitted in evidence were made. It may be that in order to secure their payment further legislation would become necessary. The conspiracy was not ended to the extent of shutting off the evidence admitted of declarations of conspirators: McCaskey

v. Graff, 23 Pa. 321; Lowe v. Dalrymple, 117 Pa.
564; Helser v. McGrath, 58 Pa. 458.''

In Osbourne v. State, 55 Southern (Miss.) 52, it
was held in a prosecution for conspiring to burn
a stock of goods with intent to defraud an insurance
company that "admissions made by a co-conspirator
after the fire, but while accused was trying to obtain
a settlement with the insurance company, were ad-
missible in evidence; the object of the conspiracy
not having been accomplished.'' See also McCabe
v. Burns et al., 66 Pa. 356; Confer et al., v. McNeal,
74 Pa. 112; Commonwealth v. Stambaugh, 22 Pa.
Superior Ct. 386; Commonwealth v. Bingle, 62 Pa.
Superior Ct. 105. We have no doubt that the learned
trial judge, if his attention had been directed to the
matter, would have given the jury more extended and
detailed instructions with respect to the manner in
which the declarations under discussion should be
considered and applied, but we are equally satisfied
that his failure so to do did not, under the evidence
in this case, result in any possible injury to the de-
fendants. The first assignment of error is accord-
ingly overruled.

The second and third assignments allege error in
the refusal of the court to charge the jury, in answer
to points submitted in behalf of the defendants, that
the Commonwealth had failed to prove any facts or
circumstances relating to the charged common ob-
ject or design from which the jury would be justified
in finding the existence of the alleged conspiracy
within two years prior to the finding of the indict-
ment. We have already stated that an examination of
the testimony convinces us that there was sufficient
evidence, if believed by the jury, to justify them in con-
victing the appellants under the conspiracy indictment.
The weight of the evidence and the credibility of the
witnesses were for the jury and we are of opinion that
the court below did not err in declining to charge as

requested, or abuse its discretion in refusing a new trial, and that there was no legal ground for arresting the judgment. The granting of a new trial "depends on the legal discretion of the court, guided by the nature and circumstances of the particular case," and we are satisfied that there has been no abuse of this discretion in this case. This conclusion disposes of the fourth and fifth assignments which charge error in refusing a new trial and in overruling appellants' motion in arrest of judgment.

The sixth assignment is to the final judgment pronouncing sentence upon appellants. By the seventh and last assignment of error it is charged that the court below erred in overruling appellants' motion to quash the indictments upon the ground that they had been submitted to the grand jury without a previous arrest and binding over of two of the defendants, William and Samuel Strauss.

From the record brought up on these appeals it appears that informations were made by a member of the state police force before an alderman of the City of Easton on April 9, 1925, against appellants and another defendant, George Wilson, charging them with the offenses involved. Warrants were duly issued and placed in the hands of a constable who arrested one of the appellants, Stewart Mathias, and the said George Wilson, but was unable to find the other defendants. At a hearing on April 11, 1925, the said Mathias was held under bail for court and the other defendant, George Wilson, was committed to jail to await trial. On April 14, 1925, the district attorney presented his petition to the Court of Quarter Sessions, reciting the above mentioned facts and setting forth that the informations charged the offenses as having been committed on May 5, 1923; that the next session of the grand jury of said county would not be held until June, 1925; that the prosecution of said offenses would be barred by the statute of limitations by that

time; and praying the court to approve the submission by him as district attorney at that time and to the grand jury then in session of the indictments attacked by said motion. Upon presentation of this petition the president judge of said court granted the prayer thereof and there was indorsed upon the indictments an order authorizing their submission for cause shown. Upon permission granted by the court a nol. pros. was entered as to the said George Wilson. True bills were found on April 14, 1925. Without the knowledge of the district attorney, (as stated in appellee's brief), the defendants, Samuel and William Strauss, appeared before the committing magistrate on April 13th and entered bail for a hearing on April 22, 1925, a date subsequent to that upon which the grand jury then in session completed its duties. The proposed hearing before the magistrate was continued from time to time until it was agreed by counsel for appellants shortly before the June sessions, 1925, when an application for a continuance of the trial then listed was before the court, that they did not desire a preliminary hearing if the Commonwealth furnished a bill of particulars. A bill of particulars was duly furnished and excepted to, which exception was dismissed. The learned counsel for appellants rely upon Commonwealth v. Green, 126 Pa. 531, in support of their contention that, although the court may have authorized the presentation of an indictment to a grand jury where there has not been a previous binding over, such bill should be quashed unless it appears that there was "pressing and adequate necessity" to warrant such extraordinary procedure. The case cited, however, does not support their proposition when applied to the facts in this case. In Commonwealth v. Green the grand jury took the initiative and made a presentment against the defendant, not upon their own knowledge or observation

or with respect to a matter which had been given them in charge by the court, but from information incidentally received by them while investigating another case. The district attorney then obtained leave of court to prefer a bill based upon such presentment. When these facts were developed in support of the motion to quash this indictment the motion prevailed and the indictment was quashed. Our Supreme Court plainly indicated in its opinion that the question whether an indictment should be sustained or quashed under such circumstances was largely a matter for the discretion of the trial court, and that this discretion would be reviewed only when an abuse thereof had been both manifest and flagrant. In the course of the opinion it is stated that, "It is certainly true, however, as we have said, that the district attorney in an exigency or when the occasion seems to require may prefer an indictment before a grand jury without a previous binding over or commitment, but this power is only to be exercised under the circumstances stated, for the public good, and then the proceeding is always under the supervision and control of the court." Here the submission was by express leave of the court and in our opinion the circumstances fully justified the granting of the permission. There was therefore no abuse of discretion on the part of the court below in granting the permission or in refusing to quash the indictment.

The assignments of error are all overruled and the judgment affirmed, and it is ordered that the appellant herein appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time this appeal was made a supersedeas.