## Commonwealth v. Osterstock et al.

*William A. Frack*, for Commonwealth.

*Hogan & Scott* and *Edward S. McCluskey*, for defendants.

STEWART, P. J., November 16, 1936.—The first paper taxing the costs was signed by the three attorneys for all the 10 defendants. It was dated July 3, 1936, and was filed in the quarter sessions on July 27, 1936. It contains in its several paragraphs the names and the fees for each witness, and alleges that the testimony of the witnesses mentioned was not directed to the conspiracy charge, or that their testimony "was as much in support of the counterfeiting charge as that of the conspiracy"; that the testimony was cumulative and immaterial. Some paragraphs contained the names of a large number of witnesses whose names were upon the subpoena, but it is alleged they were not called. Other paragraphs contained the allegations that the witnesses were officers and employes of the State at the time of the trial, and were not entitled to witness fees. We understand that the district attorney admits these to be the facts, and that the fees of State officers have been deducted from the bill.

The main question raised by the paper referred to was that it was improper to place all the witness fees in the conspiracy charge. The record shows that the clerk of quarter sessions, Mr. Ritter, on August 11, 1936, held a

hearing. It is admitted no testimony was taken before Mr. Ritter. He was practically asked to decide the matter without any knowledge of the specific contention that the costs should be apportioned between the indictments, nos. 73, April term, 1935, 74, April term, 1935, 65, April term, 1936, and 67, April term, 1936. He declined to apportion them, in a written opinion filed August 13, 1936. On August 21, 1936, Leon Wise et al., by their counsel, appealed from the decision of the clerk, and attached as reasons for their appeal, a carbon copy of the paper dated July 3, 1936, and filed before Mr. Ritter on July 27, 1936, and averred as an additional reason:

"That L. D. Ritter, Clerk of Quarter Sessions Court of Northampton County, erred in not making a division of the costs in the above matter between or among the four (4) indictments tried at the same time in this matter namely, indictments No. 73 April Term, 1935; No. 74 April Term, 1935; No. 64 April Term, 1936, and No. 67 April Term, 1936, for the reason, that the evidence adduced in the trial went to matters pertaining to the four (4) indictments and not to one (1) indictment alone."

That appeal was filed eight days after Mr. Ritter's decision, and it was not signed by "the party aggrieved by the taxation," but was signed by counsel, and it is not verified by an affidavit.

On August 24, 1936, Samuel Buchman, a defendant, and one of those mentioned in the appeal referred to, filed his appeal, and he gave reasons which are an exact copy of the paper dated July 3, 1936, and filed July 27, 1936. Mr. Buchman signed his appeal, and swore to it. It was filed on August 25, 1936, four days after the first appeal. In the answer to the rule to strike off the appeal it is stated that the attorney for appellants did not receive notice of the decision of the clerk until August 17th, and that the first appeal, filed on August 21st, was in time. If it be admitted that he did not get notice of the clerk's decision until August 17th, nevertheless the notice itself disclosed that the opinion had been filed on August 13th, and the time would

be up on August 18th. That appeal was too late. In the brief of the learned counsel it was stated that the appeal of Mr. Buchman, filed on August 25th, was to be considered, not as an appeal, but as a specification under our Rule of Court 99. The difficulty with that view is that the appeal of August 21st is not technically an appeal within the wording of the court rule because not signed by the parties aggrieved and because there was no affidavit. The appeal of Mr. Buchman, although properly signed and sworn to, would clearly be too late.

Courts have uniformly construed rules of court on the subject of taxation of costs strictly. In Bard-Will Co., Inc., v. Groff, 41 Lanc. L. R. 21, the syllabus is:

"Under Section Two of Rule Thirteen of Common Pleas Rules of Court an appeal from the taxation of costs will be dismissed when taken more than five days after the date of taxation.

"Taxation of costs will be presumed to have been made on the day the rule was returnable in the absence of anything to show to the contrary."

In connection with the last paragraph, we suggest, following the analogous decisions in justice of the peace cases, where a hearing is had before the clerk, and the decision is not announced at once, that he should inform counsel at the hearing of the day on which decision will be filed.

In Burrell v. Bolling, 19 Westm. 83, the syllabus is:

"Under rule No. 80 of the Court of Common Pleas of Westmoreland County, which provides that the affidavit of the party, his agent or attorney, attending the correctness of the bill, and the attendance and materiality of the witnesses shall be conclusive of all the facts in the bill filed, as well to the officers as to the court, on appeal, unless specially contradicted under oath, means that unless testimony is taken by a party appealing from the taxation of the costs tending to contradict the facts set forth in the bill of costs and sworn to by the party filing the same, or his agent or attorney, those facts must be taken as conclusively proven."

That case is of value as showing that in the instant case testimony should have been produced to the clerk in support of present appellants' contention. See Bogle v. Pratt, 12 D. & C. 808. In our own case of Shover's Estate, 16 Northamp. 111, no specifications were filed. We said, referring to the then Court Rule 52: "If that section had been invoked, this appeal would be dismissed." It is, however, argued that there is no rule in the quarter sessions applicable to the taxation of costs; that Rule 99 only applies to the common pleas. We cannot believe that this contention is made seriously. The rules of court that went into effect last year give Rule 99 under the heading "Common Pleas and Quarter Sessions Rules." The rule is as follows:

"All bills of costs shall in the first instance be taxed by the prothonotary and either party may have such taxation on five days' notice to the opposite party.

"The party aggrieved by the taxation may appeal therefrom within five days after the taxation, but the party appealing shall within five days after the appeal file a specification, verified by affidavit, of the items to which he objects, otherwise the appeal will be dismssed."

Of course there is no prothonotary in the court of quarter sessions, but there is a clerk, whose duties are very much like those of the prothonotary, and very little light would be added by making the rule read "All bills of cost shall in the first instance be taxed by the Prothonotary or Clerk." The learned counsel for appellants never construed the rule as not applicable to the quarter sessions when they taxed these costs. It should be noted that Rule 99 is an exact transcript of Rule 58 of the last rules of court which were adopted in 1919, including the word "prothonotary." The only difference between the two sets of rules is that in the old rules there was a section 272, as follows:

"The foregoing rules of the court of common pleas, *mutatis mutandis,* are hereby extended to this court as far

as they are applicable, and not in conflict with the rules in this schedule."

Why that section was not put in the present rules by the committee to revise the court rules we know not, but, as we said, we do not think this objection a serious one, and we only refer to it so that the bar will know that, as we construe the rules, section 99 applies to the quarter sessions equally with the common pleas. As the amount involved is a large one, we have however concluded not to base our decision alone on the neglect to appeal in time, but also to consider this case on its merits. It should be observed, however, that appellants are not entitled to anything as a matter of right. As is conclusively shown by the opinion of Judge Smith in Commonwealth v. Kocher, 23 Pa. Superior Ct. 65, the taxation of costs is a matter for the exercise of judicial discretion. The syllabus of that case is as follows:

"In disposing of the costs in a criminal prosecution, the discretion of the grand jury, of the petit jury, and of the court, is in its nature judicial, and is to be guided in its operation by the general principles that govern the exercise of judicial discretion. It may be reviewed only so far as to determine whether its exercise is judicial or arbitrary; and it is only an abuse of this discretion that is subject to correction."

Judge Smith reviews all the cases, and shows that, while there are some variations, yet the underlying principle is correctly set forth in the syllabus. The items of the bill of costs before the clerk and here are identical. Four cases were tried together. No. 73, April term, 1935, was the conspiracy case. It is scarcely necessary to cite authorities which show the wide scope of a criminal trial for conspiracy. Some of them are Commonwealth v. McClean, 2 Pars. Sel. Eq. Cas. 373; Commonwealth v. Strauss, 89 Pa. Superior Ct. 82; Commonwealth v. Bartilson et al., 85 Pa. 482; and Commonwealth v. Benz, 318 Pa. 465.

The indictment contained two counts. The first one alleged that defendants did then and there conspire, combine, confederate and agree together, to cheat and defraud the Commonwealth of Pennsylvania of taxes imposed, levied,. assessed and payable on all malt liquors manufactured by the Seitz Brewing Company and sold within the boundaries of the Commonwealth of Pennsylvania. The second one alleged that defendants did then and there conspire, combine, confederate and agree together, to avoid the payment of legal malt liquor taxes imposed, levied, assessed and payable upon all malt liquors manufactured and sold within the boundaries of the Commonwealth of Pennsylvania. Under these two counts it will be perceived that a very considerable field had to be traveled with respect to the manufacture and sale of malt liquors. It involved not only many specific sales, but it also involved the question of the sale of bottled beer with counterfeit crowns, because the use of the legal crown was one of the methods adopted by the Beverage Tax Division of the Department of Revenue, which promulgated regulations governing the purchase and use of tax-paid crowns. During the progress of the trial the learned counsel for defendants objected to the admission of much of the testimony because they contended that the Commonwealth should first prove the unlawful conspiracy. We admitted the testimony with great reluctance upon the promise of the learned Deputy Attorneys General subsequently to produce evidence of the unlawful conspiracy, which they failed to do, and which failure caused the direction to the jury to find a verdict of not guilty, but the testimony was received, and after carefully examining it, we are unable to say that any part of it only bore on the indictments other than conspiracy. We can say that some of it bore on the question involved in the question of conspiracy and also on the other indictments, but no one is able to apportion the testimony, or to say just how much weight should be placed on each of the other cases. Every witness whose name appears in the list of witnesses objected to was a

necessary witness for the proof of the charge of conspiracy. No. 65, April term, 1936, was an indictment against the Seitz Brewing Company for the violation of the Pennsylvania Malt Beverage Tax Law of May 5, 1933, as amended by the Act of July 9, 1935, P. L. 628. The verdict in that case was guilty. Nos. 74, April term, 1935, and 67, April term, 1936, were indictments against Harry J. Osterstock and Paul W. Chambers for violation of the same act. The verdicts were not guilty, and Paul W. Chambers to pay the costs. There were no witnesses in the last three indictments whose testimony was strictly confined to defendants in those indictments. They all were necessary witnesses in the conspiracy case. If you could put your hand on some witnesses, and say their testimony does not apply to the conspiracy case, but applies to one or more of the other indictments, the task would be an easy one, and we would follow our decision in Commonwealth v. Kramlich, 16 Northamp. 101. In that case there were two subpœnas, one in no. 65, December sessions, 1916, and one in no. 66, December sessions, 1916. In 65, December sessions, the date was March 25, 1916. In 66, December sessions, the date was April 15, 1916. In 65, December sessions, the verdict was not guilty, the county to pay the costs. In 66, December sessions, the verdict was guilty. We did apportion the costs in that case because we thought we could apportion them after examining the testimony of the witnesses in a proper and just manner, but we are unable to do it in the instant case. We could not arbitrarily divide the witness fees into four parts, and say that each case must bear one fourth of the costs. It must be admitted that the main charge was the charge of conspiracy.

Fortunately we have retained our notes of the testimony, and have carefully examined the same in connection with the testimony of the witnesses objected to. All of them were examined on the trial with the exception of four witnesses who can be added to the witnesses referred to in paragraph 6. In that paragraph it is alleged that

there were 26 witnesses who were not called. It is not necessary to call witnesses in order that witness fees must be paid them. We decided this matter in Commonwealth v. Donatelli, 17 Northamp. 292. The syllabus of that case is as follows:

"The rule is that a witness is entitled to the fees allowed by law if he attend and is examined without having been subpœnaed, or if he is subpœnaed and attend without being examined."

In our opinion we referred to decisions of the Supreme Court and also of the lower courts which sustained our view, and since then several of the lower courts have followed the same rule. In the absence of proof as to these witnesses that they were not subpœnaed, their witness fees must be allowed. Among these witnesses is Leo Liberti who seems to have two charges for mileage which should be explained. The fifteenth paragraph refers to $100 fees for Dr. Correll. Dr. Correll was not a witness on this trial, but we have a distinct recollection that he was called as a witness by the district attorney at a hearing before us in which he opposed an application by defendant Chambers to have the case continued. Dr. Correll made a physical examination of Chambers and qualified as an expert witness. While he was not a witness at the trial, his fees are payable as part of the costs under the provisions of the Act of June 29, 1923, P. L. 973. We have already said that State employes should not be paid witness fees. Defendants who were sentenced in the conspiracy charge should not be excused from paying witness fees by the application of an arbitrary mathematical rule, and that was what the clerk was asked to do, and what we are now asked to do. Of course the record costs in each case must be paid by the losing party in that case. We do not think the bill filed should be changed except in the minor particulars above referred to. For the reasons that the appeal was too late, and on the merits it must be disallowed.

And now, November 16, 1936, the specifications of error are not sustained, and the appeal is dismissed.